F. P. POWERS, ADMR. OF A. K. POWERS, v. TRAVELERS INSURANCE COMPANY.

(Filed 31 October, 1923.)

**1. Insurance, Accident—Policies—Contracts—Interpretation.**

> While the terms of a policy of accident insurance, when ambiguously expressed, are to be construed more strongly in favor of the insured, this rule cannot apply when, from the wording of the instrument, the clear intent of the parties may be interpreted.

**2. Same—Public Policy.**

> In interpreting a policy of accident insurance, the clear intent of the parties, as expressed in the policy contract, will be given effect, when not in conflict with public policy.

**3. Same—Ambiguity.**

> A policy of accident insurance, relieving the company from liability for the death of the insured caused by "firearms," is not contrary to our public policy, and when clearly expressed in the instrument, is enforceable; nor will a contrary intent be construed from the wording of another provision in the contract relieving the insurer from liability only when the death is intentionally caused, it appearing from the language of the further provisions that they must necessarily be applicable only to certain causes of death therein enumerated.

APPEAL by defendant from *Allen, J.,* at March Term, 1923, of PENDER.

Civil action. The plaintiff's intestate, a resident of Sanford, Florida, purchased the policy in question on 14 June, 1920. He came to his mother's home in Pender County the next day, and was killed on 19 June. Wearing a white suit and a Panama hat, he left the house and walked out in the direction of the barn, between 9 and 10 o'clock at night, and was shot by some one whom he did not recognize. He was carried into the house, and said, "I walked out there. I thought I heard a noise at the barn, and just before I got there some one came out, and before I could speak he threw up his hands and shot me. I don't know who it was, unless it was somebody that took me for a haunt." It is admitted that the sole cause of his death was the gunshot wound.

The following are the material parts of the policy:

"The Travelers Insurance Company, Hartford, Conn., hereby insures the person whose name is written upon the stub of this ticket policy in the possession of the company, bearing even number and date herewith, against bodily injuries effected during the term of this insurance, solely by external, violent, and accidental means, in the manner following, subject to the conditions and limitations herein contained, to wit: a. If such

injuries shall, independently of all other causes, result in death within ninety days from the date of accident, the company will pay $2,500 in lieu of any other indemnity to the executors, administrators or assigns of the insured."

"Additional Provisions: g. This insurance shall not cover disappearance nor injuries of which there is no visible contusion or wound on the exterior of the body of the insured, nor shall it cover accident, injury, disability or death resulting wholly or partly from any of the following, to wit: aeronautics, . . . firearms, fireworks or explosives of any kind, nor shall this insurance cover suicide, sane or insane, or injuries, fatal or nonfatal, inflicted intentionally by the insured or by any other person, sane or insane." . . .

The plaintiff sued to recover $2,500 for the death of the insured, and it was admitted that, if entitled to recover, he is entitled to this amount.

The verdict was as follows:

1. Did plaintiff's intestate come to his death from injury inflicted by the use of firearms? Answer: Yes.

2. Did plaintiff's intestate receive a fatal injury intentionally inflicted by some person unknown, while sane or insane? Answer: No.

The first issue was answered by consent. The defendant moved for judgment upon the verdict. Denied. Exception. Judgment. Exception. Appeal by defendant.

*Stevens, Beasley & Stevens for plaintiff.*
*Rountree & Carr for defendant.*

ADAMS, J. The defendant's motion for judgment upon the verdict should have been allowed. The first issue was answered by consent; and the contract insured the intestate against bodily injuries effected solely by external, violent, and accidental means, as therein set out, subject to specific conditions and limitations. Among these limitations is this: that the insurance should not cover death resulting wholly or partly from several designated agencies, one of which is "firearms."

The insured and the defendant had the legal right to enter into the contract, and the parties are bound by its terms. "In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please, upon their obligations, not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." 14 R. C. L., 931; *Roech v. Protective Assn.,* 51 L. R. A. (N. S.) (Iowa), 221; *Lewis v. Accident Co.,* 17 L. R. A (N. S.) (Mass.), 714; *Penn v. Ins. Co.,* 158 N. C., 29; *S. c.,* 160 N. C., 400.

22—186

In the case last cited *Walker, J.,* said: "The plaintiff and defendant had the legal right to make any contract with each other, not unlawful in itself, both being at arm's-length and in the full possession and enjoyment of their mental faculties. We must decide the case, therefore, not by what we may think would have been a wiser and more discreet contract on the part of the plaintiff, if he could have procured such a one, but by what is written in the contract actually made by them. Courts are not at liberty to rewrite contracts for the parties. We are not their guardians, but the interpreters of their words. We must, therefore, determine what they meant by what they have said—what their contract is, and not what it should have been."

It is conceded that the first issue involves a question as to the proper construction of paragraph "g" set out in the statement of the case. The plaintiff contends, first, that the "firearms clause" is modified by the subsequent words, "or injuries, fatal or nonfatal, inflicted intentionally by the insured or by any other person, sane or insane"; so that, the exemption from liability for death by "firearms" should be construed as existing only when the fatal injury is intentionally inflicted. We cannot concur in this construction. By reference to the paragraph referred to, it may be seen that the various instrumentalities of accident or death are classified, and that the provision exempting the defendant from liability for death resulting wholly or partly from firearms includes also "fits," "vertigo," and "sleep-walking" (which preclude the idea of intention), and is independent of the succeeding clause, "nor shall this insurance cover . . . injuries . . . inflicted intentionally."

The plaintiff next insists that if the first position is not tenable, the contract is ambiguous and should be construed so as to resolve every doubt against the insurer and in favor of the insured. If the clause is ambiguous, or if there is uncertainty as to its proper interpretation, it should be construed against the defendant rather than against the insured, on the ground that a written contract should, in case of doubt, be interpreted against the party by whom it was drawn. *Bray v. Ins. Co.,* 139 N. C., 390; *Trust Co. v. Ins. Co.,* 173 N. C., 558. "But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The strict rule of construction does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embody-

ing requirements, compliance with which is made the condition to liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." 14 R. C. L., 931.

The language of the Court in *Penn v. Ins. Co., supra,* is directly in point: "While the rule is thoroughly settled that policies of this and like character are to be construed liberally, and that ambiguous provisions, or those capable of two constructions, should be construed favorably to the insured and most strongly against the insurer, plain, explicit language cannot be disregarded, nor an interpretation given the policy at variance with the clearly disclosed intent of the parties. Taking the policy in the case at bar by its four corners, it will admit of but one construction."

The policy in question is a "ticket policy," evidently intended to insure against injury or death in limited cases, and to circumscribe the scope of the defendant's liability. It contains the unequivocal provision that the insurance shall not cover "accident, injury, disability, or death resulting wholly or partly from . . . firearms"; and, in the absence of ambiguity, there is no reason for disregarding the plain meaning of the language by which the intention of the parties is expressed. Upon the verdict as returned, judgment will be rendered for the defendant.

Error.