WESTPHAL, et al., Appellants v. AMCO INS. CO., Respondent

(209 N.W.2d 555)

(File No. 11164. Opinion filed July 26, 1973)

**Dana, Golden, Moore & Rasmussen,** and **Richard W. Sabers,** Sioux Falls, for plaintiffs and appellants.

**Davenport, Evans, Hurwitz & Smith,** and **Ellsworth E. Evans,** Sioux Falls, for defendant and respondent, Amco Ins. Co.

WINANS, Justice.

This is an action for declaratory relief declaring that defendant, Amco Insurance Company, under its uninsured motorist coverage, should pay damages in excess of the limits of defendant Dairyland Insurance Company's policy insuring motorist coverage with respect to the automobile in which plaintiffs were riding. The trial was held to the court and the facts stipulated. The lower court held that plaintiffs had no right of recovery from Amco under the terms and conditions of its liability policy. We reverse.

The controversy arises out of a motor vehicle collision occurring April 26, 1970 near Fort Pierre, South Dakota, involving a motor vehicle operated by Robert McInnis, an uninsured motorist, and a motor vehicle owned and operated by plaintiff, Marvin Westphal, in which the other three plaintiffs were occupants. McInnis was not injured. Marvin Westphal received injuries necessitating medical and hospital care; Elsie Westphal, his wife, sustained personal injuries causing her death on May 7, 1970. Leslie Hoyt and Evelyn Hoyt, his wife, sustained personal injuries necessitating hospital and medical attention. It is stipulated that Robert McInnis carelessly and negligently drove his motor vehicle into and against the Westphal motor vehicle with great force and violence; that plaintiffs' injuries were the proximate result of the negligence and carelessness of Robert McInnis; that the forms contained in the insurance policies of the defendants, Amco and Dairyland, including endorsements, were filed with and had the approval of the South Dakota Commissioner of Insurance prior to the date of the accident; and that the plaintiffs, Marvin Westphal and Leslie Hoyt are brothers-in-law and on April 26, 1970 the said Leslie and Evelyn Hoyt were in Fort Pierre visiting Marvin and Elsie Westphal.

Plaintiff Westphal and his automobile were insured under a policy of automobile liability insurance issued by defendant Dairyland which included "uninsured motorist coverage". Dairyland deposited its uninsured-motorist coverage limits in the amount of $20,000 in court, and consequently is not a party to this appeal.

Amco had in force a policy of automobile liability insurance describing a 1963 Pontiac motor vehicle owned by plaintiff, Leslie Hoyt, the named insured in such policy. Its uninsured-motorist coverage has limits of liability of $10,000 each person and $20,000 each accident which are the limits of liability specified in Dairyland's policy.

The defendant Amco bases its defense of nonliability on Condition 7 of its policy relating to its uninsured-motorist coverage which reads in part:

"*Other Insurance:* With respect to bodily injury to an insured while occupying an automobile not owned by the principal named insured, the insurance under this endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

The condition cited in Amco's policy is identical with the provision relating to "other insurance" in Dairyland's policy.

It is also a part of the stipulation of facts, "That the aggregate amount of the general and special damages, including the pecuniary loss sustained by the persons for whose benefit an action may be brought under the wrongful-death statute of the State of South Dakota, exceeds the sum of $20,000, which has heretofore been deposited herein with the Clerk of this Court by defendant Dairyland Insurance Company." It is thus apparent that the actual damages suffered by plaintiffs have yet to be determined.

Respondent Amco presents the question involved in this appeal in the following succinct language: "The controversy presented boils down to the question of whether Amco is free to contract as it did with respect to 'other insurance' applicable to its uninsured motorist coverage."

When the policies involved were issued, SDCL 58-11-9, adopted in 1966, was in effect,* providing in part:

"*Motor vehicle insurance—Uninsured motorist coverage.*—No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered

---

* Subsequently amended by Ch. 261, S.L.1972.

or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in § 32-35-17, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * * because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage * * *."

SDCL 32-35 is an act entitled "FINANCIAL RESPONSIBILITY OF VEHICLE OWNERS AND OPERATORS". Section 17 of that act in pertinent parts provides as follows:

"No policy * * * shall be effective * * * unless such policy * * * is subject, if the accident has resulted in bodily injury or death, to a limit * * * of not less than ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident * * *."

The question posed by respondent was answered in the case of Van Tassel v. Horace Mann Insurance Company, 1973, Minn., 207 N.W.2d 348, by the Supreme Court of Minnesota, as follows:

"The case essentially involves a reconciliation, if possible, between restrictive provisions of the insurance contracts and our statute, Minn.St.1967, § 72A.149, which requires all policies of automobile insurance issued after the effective date of the statute to contain uninsured-motorist coverage. The question involved in this case is really whether the insurer's liability is limited to recovery in the amount of one policy, or whether each policy carries its own liability which can be used to 'stack' coverage up to the full amount of plaintiffs' damages."

The restrictive policy provisions in each of the policies involved in the Minnesota case were practically identical with Condition 7 of the policy involved in our case. The relevant provisions of the Minnesota statute, while not the same, are similar in intent. The Minnesota court, quoting from the annotation in 28 A.L.R.3d 551, 554, quoted as follows:

> " 'A number of courts have held that "other insurance" provisions, whether in the form of a "pro rata," "excess insurance," "excess-escape," or other similar clause, are invalid as a part of uninsured motorist protection, on the ground that the statute requiring every liability policy to provide this type of protection will not permit the insurer to provide in any way that the coverage will not apply where other insurance is also "available," despite the fact that the insured may thus be put in a better position than he would be in if the other motorist were properly insured. Other courts have stated, however, that the design and purpose of uninsured motorist statutes are to provide protection only up to the minimum statutory limits for bodily injuries, and not to provide the insured with greater insurance protection than would have been available had he been injured by an insured motorist, and have held that such "other insurance" provisions are valid where they do not reduce coverage below the minimum statutory limits.' "

The Minnesota court, after quoting from other cases and authority, aligned itself with the majority, holding in the following language:

> "It seems to us that, in spite of the attempt by the insurer to limit its liability to one policy or to the amount recoverable under one policy, the fact that the legislature required an uninsured-motorist provision .in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for on each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery ex-

ceeding what he would have received if the uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium.

"We are convinced that the trial court correctly held that defendant is liable on each of the policies involved as far as uninsured-motorist liability is concerned."

We have quoted rather extensively from the Minnesota case because it is of recent origin. However, Michigan in three cases, Blakeslee v. Farm Bureau Mutual Ins. Co. of Mich., 388 Mich. 464, 201 N.W.2d 786; Rowland v. Detroit Automobile Inter-Insurance Exchange, 388 Mich. 476, 201 N.W.2d 792, and Boettner v. State Farm Mutual Insurance Company, 388 Mich. 482, 201 N.W.2d 795, all decided in the latter part of 1972 by unanimous decisions of the Supreme Court of that state, have adopted the same rule. In Rowland, supra, combined recovery was not allowed because the insurance policy was issued prior to the effective date of the Michigan statute, which statute was controlling in both Blakeslee and Boettner, supra. In Blakeslee the court in a footnote to its decision cited 18 jurisdictions holding "other insurance" provisions invalid when contained in a policy providing protection against injuries caused by uninsured motorists.

There were eight jurisdictions cited with a contrary doctrine but even then as Blakeslee stated, of that eight "only 3 of them are directly on point—in 3 there is no uninsured motorist statute involved, in 2 the statute itself allows prorating." There can be added to the jurisdictions cited for disallowing "limitations" contrary to the statute, the states of Minnesota (Van Tassel v. Horace Mann Insurance Company, supra) and Connecticut (Fidelity and Casualty Co. of New York v. Darrow, 1971, 161 Conn. 169, 286 A.2d 288).

The court in Blakeslee, supra, said:

> "The trend of the most recent decisions where an uninsured motorist statute is involved is toward allowing stacking (i. e. voiding 'other insurance' clauses). This is persuasive but not decisive. Determinative must be the apparent policy of the Michigan Legislature.

> "Defendant argues that 'the purpose of the statute in making uninsured motorist coverage compulsory . . . is to give the same protection to a person injured by an uninsured motorist as he would have if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy.'

> "We are unable to accept defendant's construction of the statute. The language of the statute is plain, unambiguous and *mandatory*.

> "It unequivocally requires that 'No . . . policy . . . be delivered . . . unless coverage is provided therein.' Stated in the affirmative, *every* policy *must have* this coverage. Only after the mandatory offer is made can the insured reject it in writing.

> "Nowhere in the statute does the legislature attempt to fix any maximum amount of recovery less than the amount of the loss. The lack of pro ration language in the statute is conspicuous and can only weigh in favor of an inference of allowing stacking recovery."

Blakeslee quotes with approval, "the rule stated in Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 614, 243 So.2d 736, 742 (1971) represents the better reasoning as well as the majority rule, which we now adopt." That rule is set forth in the following language:

> " 'We hold that our statute sets a minimum amount for recovery, but it does not place a limit on the total amount of recovery so long as that amount does not

exceed the amount of actual loss; that where the loss exceeds the limits of one policy, the insured may proceed under other available policies; and that where the premiums have been paid for uninsured motorist coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving that coverage for which the premium has been paid.' "

We adopt in this case the rule announced in Safeco Insurance Company as set forth and adopted by Michigan in the Blakeslee decision, supra, and direct the circuit court to enter its judgment accordingly.

Reversed.

All the Justices concur.