2003 SD 133

Connie PHEN, Plaintiff and Appellee,

v.

**PROGRESSIVE NORTHERN INSUR-
ANCE COMPANY d/b/a Progressive
Insurance Company, Defendant and
Appellant.**

No. 22648.

Supreme Court of South Dakota.

Argued Aug. 26, 2003.

Decided Nov. 12, 2003.

Matthew T. Tobin, Steven M. Johnson of Johnson, Heidepriem, Miner, Marlow and

Janklow, Sioux Falls, for plaintiff and appellee.

William A. May of Costello, Porter, Hill, Heisterkamp, Bushnell and Carpenter, Rapid City, for defendant and appellant.

SABERS, Justice.

[¶ 1.] Connie Phen made a claim against an uninsured motorist provision in her contract of insurance with Progressive Northern Insurance Company (Progressive). Progressive denied the claim and Phen brought suit to force payment of the claim. Phen also alleged that Progressive acted in bad faith when it denied her claim. After hearing cross motions for summary judgment, the circuit court granted 1) Phen's motion and directed Progressive to pay the $25,000 limit under its uninsured motorist provision. The circuit court denied 2) Progressive's motion for summary judgment on the bad faith issue finding that there was sufficient evidence to put the question before a jury. In an amended order, the court directed entry of final judgment pursuant to SDCL 15-6-54(b). Progressive appeals both issues. We affirm Issue 1 and reverse Issue 2.

## FACTS

[¶ 2.] The parties have stipulated to the facts. On July 4, 2001, Connie Phen was seriously injured when the motorcycle she was on was struck by a vehicle. The motorcycle was owned and driven by Guy Koppinger. Lynne Peterson was driving the other vehicle and her negligence was the proximate cause of Phen's injuries. Peterson was uninsured. Koppinger's motorcycle was insured by Financial Indemnity Company (Financial) and in October 2001, Financial paid Phen its uninsured motorist policy limit of $25,000.

[¶ 3.] Phen's injuries led to approximately $100,000 in medical bills. She sustained injuries to her leg, internal organs

and her back. Phen was in the hospital for almost two months and missed over two months of work. After recovering $25,000 from Financial, Phen made a claim for the $25,000 policy limit under her uninsured motorist benefit with Progressive. Progressive denied the claim based on an exclusion under the policy's "Part III Uninsured/Underinsured Motorist Coverage," Exclusion 1.e. Under the exclusion, coverage is not provided for injury sustained by any person while using or occupying:

a vehicle, other than a covered vehicle, if uninsured motorist coverage or underinsured motorist coverage applicable to such vehicle is available.

A "covered vehicle" is defined as a vehicle owned by Phen. This type of "other insurance" clause was deemed void as against public policy in *Westphal v. Amco Ins. Co.*, 87 S.D. 404, 209 N.W.2d 555 (1973). The policy also included an "anti-stacking" clause which provided:

The Limits of Liability under this Part III shall not be added to or stacked upon any uninsured motorist coverage or underinsured motorist coverage applying to other motor vehicles to determine the amount of coverage available to an insured person who sustains bodily injury in any one accident.

[¶ 4.] Phen brought suit to determine whether the policy exclusions violate public policy and are therefore void. Phen also argued that Progressive acted in bad faith when it denied her claim. The court granted Phen's motion for summary judgment on the policy exclusion and directed Progressive to pay $25,000. The court denied Progressive's summary judgment motion on Phen's claim of bad faith. Progressive appeals raising two issues:

1. Whether Progressive's "other insurance" clause violates public policy.

2. Whether the circuit court properly denied Progressive's motion for summary judgment on Phen's claim of bad faith.

We affirm the circuit court on Issue 1 and reverse on Issue 2.

### STANDARD OF REVIEW

[¶ 5.] The standard of review for summary judgment is well established. We determine whether a genuine issue of material fact exists and whether the circuit court correctly applied the law. *Nickerson v. American States Insurance*, 2000 SD 121, ¶ 7, 616 N.W.2d 468, 470 (quoting *Manuel v. Wilka*, 2000 SD 61, ¶ 17, 610 N.W.2d 458, 462 (additional citations omitted)).

[¶ 6.] Because an insurance policy is a contract, the parties are bound to its terms and insurance companies are allowed, subject to statutory constraints, to limit their liability and impose conditions upon their obligation to pay. *Miller v. Queen City Fire Ins. Co.*, 47 S.D. 379, 383–84, 199 N.W. 455, 456 (1924) (quoting *Powers v. Travelers' Ins. Co.*, 186 N.C. 336, 119 S.E. 481 (1923)). However, the conditions and limitations imposed by the insurance company must be consistent with public policy and the insurance company is liable if it acts in bad faith in denying claims.

[¶ 7.] **1. WHETHER PROGRESSIVE'S "OTHER INSURANCE" CLAUSE VIOLATES PUBLIC POLICY.**

[¶ 8.] Progressive contends that the Court should prohibit Phen from "stacking" her uninsured motorist benefits atop those she has already collected from Financial. Phen counters that 1) in proceeding under both policies she is not stacking the policies and 2) the "other insurance" clause in her policy with Progressive is void because it violates public policy.

■ [¶ 9.] The term "stacking," in insurance law has varying definitions, but for the purpose of this case, stacking,

> arises where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded. In essence, stacking describes the phenomenon of insureds or claimants against them adding all available policies together to create a greater pool in order to satisfy their actual loss.

12 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 169:4 (3d Ed. 1999).[1] Phen is attempting to collect coverage for the same claimant and the same loss from two different policies and therefore, contrary to her contention, this case involves the stacking of insurance claims or policies.

[¶ 10.] The trial court relied on this Court's decision in *Westphal* in granting summary judgment to Phen on the ground that the other insurance clause is void because it violates public policy. In *Westphal*, this Court adopted the holding of *Safeco Insurance Company of America v. Jones*, which provided:

> We hold that our statute sets a minimum amount for recovery, but it does not place a limit on the total amount of recovery so long as that amount does not exceed the amount of actual loss; that where the loss exceeds the limits of one policy, the insured may proceed under other available policies; and that where the premiums have been paid for uninsured motorist coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which

restricts the insured from receiving that coverage for which the premium has been paid.

*Westphal*, 87 S.D. at 410–411, 209 N.W.2d at 559 (quoting *Blakeslee v. Farm Bureau Mutual Ins. Co. of Mich.*, 388 Mich. 464, 475, 201 N.W.2d 786, 792 (1972) (quoting *Safeco Insurance Company of America v. Jones*, 286 Ala. 606, 614, 243 So.2d 736, 742 (1971))).

■ [¶ 11.] Progressive argues that *Westphal* no longer represents the public policy of this state because the Legislature has never codified the holding and because the Legislature subsequently enacted antistacking laws. Progressive failed to show that *Westphal* no longer represents public policy. We affirm the trial court on this issue and hold that the "other insurance" clause of the policy is void in this circumstance.

[¶ 12.] This Court has consistently noted that the *Westphal* holding remains sound. See *Nickerson*, 2000 SD 121, ¶ 18, 616 N.W.2d at 473, n. 5; *Union Insurance Co. v. Stanage*, 454 N.W.2d 736, 739 (S.D. 1990); *Cunningham v. Western Cas. Sur. Co.*, 90 S.D. 530, 532, 243 N.W.2d 172, 173 (1976). However, since *Westphal*, the uninsured motorist statute has been amended. The version of SDCL 58–11–9 at issue in *Westphal* provided:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for

---

1. There are other forms of stacking in insurance law and by defining stacking this way for the purpose of this case, we do not intend to restrict the definition so that it does not apply in other contexts.

bodily injury or death set forth in 32–35–17, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ... because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the *named insured shall have the right to reject such coverage*[.]

(Emphasis supplied.)  SDCL 58–11–9 now provides in pertinent part:

No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. *However, the coverage required by this section may not exceed the limits of one hundred thousand dollars* because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, *unless additional coverage is requested by the insured.*

SDCL 58–11–9 (emphasis supplied).  As the emphasized language suggests, there have been two relevant changes in the statute since *Westphal* was decided.

First, uninsured motorist coverage is now mandatory whereas before the insured had the option of rejecting coverage.  Second, the coverage required by the statute cannot exceed $100,000 unless the insured specifically requests additional coverage.  Progressive asserts that these changes remove the underpinnings of the *Westphal* decision.  However, this Courts writings have taken these modifications into account and do not appear to have changed the holding of *Westphal.*  We will address each amendment separately.

[¶ 13.]  The language in the statute that made uninsured motorist coverage mandatory was inserted in 1972.  Progressive argues that in *Westphal* the insured had a choice whether to obtain uninsured motorist protection and that choice justified the Court's holding that stacking should be allowed "where the premiums have been paid for uninsured motorist coverage." *Westphal,* 87 S.D. at 411, 209 N.W.2d at 559 (quoting *Blakeslee,* 388 Mich. at 475, 201 N.W.2d at 792 (quoting *Safeco,* 286 Ala. at 614, 243 So.2d at 742)).  Progressive asserts that once the coverage became mandatory, the significance of the fact that the insured paid premiums for the coverage "diminished considerably."  In support of this argument, Progressive cites *Nickerson,* 2000 SD 121, ¶ 15, 616 N.W.2d at 471 which stated:

Premiums for uninsured motorist coverage are charged on each vehicle merely to cover the increased risk.  Therefore, premiums are paid for the insured's "protection" that she will be guaranteed a minimum recovery.  The fact that premiums are paid for the coverage is not the conclusive determination that the insured is entitled to the full amount of coverage without deduction.  In other words, the insured who contracts for [underinsured motorist] coverage is contracting for the assurance that he will be able to recover, at a minimum, an

amount equal to the [underinsured motorist] coverage. This right of recovery applies when the insured has uncompensated damages up to the [underinsured motorist] policy limits without regard to the number of policies, vehicles or the amount of premiums paid.

(Internal citations omitted.) What Progressive neglects to mention about *Nickerson* is that this Court specifically distinguished *Westphal* in *Nickerson* and reiterated, the *Westphal* holding is sound[.] *Nickerson*, 2000 SD 121, ¶ 18, 616 N.W.2d at 473, n. 5. Furthermore, in *Westphal*, the Court clearly considered uninsured motorist coverage mandatory. The Court accepted and adopted the reasoning of the Michigan Supreme Court in *Blakeslee*, which noted:

> The language of the statute is plain, unambiguous and mandatory ... Stated in the affirmative, every policy must have this coverage. Only after the mandatory offer is made can the insured reject it in writing. Nowhere in the statute does the legislature attempt to fix any maximum amount of recovery less than the amount of the loss. The lack of pro ration language in the statute is conspicuous and can only weigh in favor of an inference of allowing stacking recovery.

*Westphal*, 87 S.D. at 410, 209 N.W.2d at 558–559 (quoting *Blakeslee*, 388 Mich. at 473, 201 N.W.2d at 791). The Court clearly believed that the language of the statute was mandatory. Therefore, Progressive's argument that the mandatory nature of the current statute requires a different result is unpersuasive.

[¶ 14.] This Court has also addressed the addition of the $100,000 limit on the amount of uninsured motorist coverage which is automatically written into policies without the insureds request for additional coverage. In *Union Insurance Co. v. Stanage*, the Court explained:

> This modification of the statute reflects a legislative determination that the maximum amount set forth in the statute is sufficient to protect those insureds who may be legally entitled to recover against an uninsured motorist.

*Union Insurance Co. v. Stanage*, 454 N.W.2d 736, 739 (S.D.1990). The Court went on to hold that an insurer may limit its total liability to the maximum amount in a subsequent policy issued to the same insured as long as the limitation was stated in the policies in clear and unambiguous terms. *Id.* This interpretation of the policy behind SDCL 58–11–9 was reaffirmed by the Court in *Nickerson*, 2000 SD 121, ¶ 18, 616 N.W.2d at 473, n. 5.

[¶ 15.] This Courts interpretation of the uninsured motorist statute in *Westphal* and subsequent decisions appears to be that an insured is allowed to stack insurance policies up to the $100,000 statutory maximum unless the insured has requested greater coverage. However, the insured may not collect an amount greater than his or her actual loss. See *Westphal*, 87 S.D. at 410, 209 N.W.2d at 558–559; *Union Ins. Co.*, 454 N.W.2d at 739; *Nickerson*, 2000 SD 121, ¶ 18, 616 N.W.2d at 473, n. 5. Therefore, according to our cases discussing uninsured motorist insurance, *Westphal* is still sound and Phen is entitled to stack her $25,000 policy limit in her contract with Progressive onto the $25,000 she has received from Financial.

[¶ 16.] As Progressive correctly asserts, the Legislature has created several anti-stacking statutes since 1973. However, not one of these statutes addresses our holding in *Westphal*. For example, when the Legislature enacted the *under* insured motorist provision in 1975, it specifically limited the amount the insured could recover to "the difference of the policy limits

on the vehicle of the party recovering or such smaller limits as he may select less the amount paid by the liability insurer of the party recovered against." 1975 Session Laws, ch 315–2. The statute has been modified but retains specific language limiting the amount of recovery in an underinsured motorist claim to the "limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against." SDCL 58–11–9.5. It is significant that there is no parallel limitation on recovery under the statutory provisions for *uninsured* motorist protection.

[¶ 17.] In 1986, the Legislature directly addressed the issue of stacking in three statutes. First, an insured may not add their uninsured motorist coverage to their underinsured motorist coverage to determine the limit of coverage for an injured person for any one accident. SDCL 58–11–9.7.

[¶ 18.] Next, an insured may not add together the limit of liability for underinsured motorist coverage for two or more of the insureds vehicles to determine the limit of coverage available to an injured person for any one accident. SDCL 58–11–9.9.

[¶ 19.] Finally, SDCL 58–11–9.8 prohibits an insured from adding together the limits of liability for uninsured motorist coverage for two or more of the insureds vehicles to determine the limit of coverage available to an injured person for any one accident. SDCL 58–11–9.8.

[¶ 20.] It is clear that the Legislature is aware of the concept of stacking and that in certain circumstances the Legislature has specifically prohibited stacking. By enacting SDCL 58–11–9.8, the Legislature has even gone so far as to codify this Court's decision in *Cunningham* which held that although the Court's decision in *Westphal* was sound, the Court would not expand it to allow an insured to stack his own uninsured motorist coverage of two vehicles. *Cunningham v. Western Cas. Sur. Co.*, 90 S.D. 530, 534, 243 N.W.2d 172, 174.

[¶ 21.] Had the Legislature determined that "other insurance" clauses were in accord with public policy in this type of circumstance, it clearly could have addressed the issue in one of the numerous changes and additions to the uninsured and underinsured motorist statutes. The Legislature has chosen to allow the rule of *Westphal* to stand, and this Court has consistently noted that the holding is sound. The trial court did not err in relying on *Westphal* to grant summary judgment to Phen. Furthermore, to the extent that the anti-stacking clause attempts to prohibit the insured from collecting under the policy when other uninsured motorist coverage is available, it also violates public policy.[2]

[¶ 22.] The Legislature has clearly enunciated a public policy of requiring in-

---

2. A review of this Court's holdings regarding *underinsured* motorist coverage accounts for Progressive's belief that Phen should only be entitled to collect up to the amount she bargained for with Progressive. See e.g. *Union Ins. Co.*, 454 N.W.2d 736; *Nickerson*, 2000 SD 121, 616 N.W.2d 468; *Cunningham*, 90 S.D. 530, 243 N.W.2d 172. This Court has consistently and clearly held that an insured may not stack underinsured coverage to amounts greater than the amount contracted.

This makes this case difficult because essentially it holds that a motorist is better off being injured by an uninsured motorist than by an underinsured motorist because he or she may stack coverage. However, the legislative enactments and our precedent since *Westphal* compel this result in an uninsured motorist case unless this Court would overturn *Westphal* and disregard the absence of a pro ration requirement in the uninsured motorist statute.

surers to provide uninsured motorist coverage to every insured in the state. A policy clause that purports to eliminate an insurance company's liability under an uninsured motorist provision violates that public policy. This is especially true where, as in this case, the insurance company would completely escape any liability whenever there is any other applicable insurance available, regardless of the amount available or the damages sustained by the insured. The trial court is affirmed on Issue 1.

[¶ 23.] **2. WHETHER THE TRIAL COURT PROPERLY DENIED PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT ON PHEN'S CLAIM OF BAD FAITH.**

[¶ 24.] In order to establish that an insurance company acted in bad faith in denying a claim, the insured must show an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial. *Stene v. State Farm Mut. Auto. Ins. Co.*, 1998 SD 95, ¶ 19, 583 N.W.2d 399, 403 (citing *Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 70 (S.D.1996)). An insurance company is entitled to challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis. *Id.*

[¶ 25.] The simple fact that Progressive asserted a policy defense is insufficient grounds upon which to find a genuine issue of material fact as to whether it acted in bad faith. The stipulated facts do not present a genuine issue of material fact but raise a legal question as to whether the facts constitute bad faith. In this instance, this is clearly a legal question to be determined de novo. In the thirty years since *Westphal,* changes in the underinsured motorist statutes and our cases regarding the same could lead a reasonable insurer to believe that *Westphal* no longer represented the public policy of this state. Indeed, the trial court even indicated that he felt the law in this area was "a little murky." Because the question whether the policy exclusion was void was fairly debatable, we hold that the trial court improperly denied Progressive's summary judgment motion on Phen's claim of bad faith.

[¶ 26.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur.

[¶ 27.] KONENKAMP and ZINTER, Justices, concur in result.

ZINTER, Justice (concurring in result).

[¶ 28.] I agree that *Westphal* controls this appeal, and *Westphal* invalidates Progressive's policy clauses that prohibit the stacking of coverage. I concur in result only because I part company with the Court's conclusion that our decisions since *Westphal* continue to reflect a public policy against "anti-stacking" exclusions in uninsured motorist insurance policies. In my view, Progressive correctly points out that this Court's more recent decisions reflect a public policy permitting such exclusions as long as the statutorily required minimum uninsured motorist coverage is provided. Nevertheless, I concur in result because *Westphal* remains the law of this State, and that decision invalidates Progressive's anti-stacking exclusions.

[¶ 29.] There is no dispute that "[t]he Legislature has clearly enunciated a public policy of requiring insurers to provide uninsured motorist coverage to every insured in the state." *Supra* ¶ 22. Therefore, I agree that, to the extent that Progressive's exclusionary clauses "purport[ ] to eliminate an insurance company's liabili-

ty under an uninsured motorist provision," they violate the public policy as expressed in *Westphal. Id.*

[¶ 30.] However, I disagree with the Court's conclusion that anti-stacking provisions also violate public policy as expressed in "our precedent since *Westphal.* ..." *Supra* n. 2 and ¶ 15. On the contrary, Progressive presents a colorable case that public policy, as expressed in our decisions after *Westphal,* permits anti-stacking provisions as long as the insured is provided the *minimum limits* of coverage.

[¶ 31.] A state's public policy "is not static, but may change as the relevant factual situation and the thinking of the times change." *American Home Assurance Co. v. Cohen,* 815 F.Supp. 365, 370 (W.D.Wash.1993) (quoting *Brown v. Snohomish County Physicians Corp.,* 120 Wash.2d 747, 845 P.2d 334, 338 (1993)). We have also recognized "[t]hat a policy [is] reflected by the *established trend* ... of the decisions of the courts...." *Bartron v. Codington County,* 68 S.D. 309, 323, 2 N.W.2d 337, 343–44 (1942). Consequently, Progressive correctly argues that we must examine our more recent decisions reflecting the public policy underlying the uninsured motorist statutes.

[¶ 32.] This Court's decisions after *Westphal* reflect that the uninsured motorist statutes are not intended to provide the insured with a full recovery for the amount of actual loss *when that loss exceeds the statutorily required coverage.* Instead our more recent decisions indicate that:

> The purpose of the uninsured motorist statutes is to provide *the same insurance protection* to the insured party who is injured by an uninsured or unknown motorist *that would have been available* to [the insured] had [the insured] been injured as a result of the negligence of a

motorist covered by *the minimum amount of liability insurance.*

> *Canal Ins. Co. v. Abraham,* 1999 SD 90, ¶ 29, 598 N.W.2d 512, 519 (emphasis added) (quoting *American Family Mut. Ins. Co. v. Merrill,* 454 N.W.2d 555, 559 (S.D. 1990) (quoting *Clark v. Regent Ins. Co.,* 270 N.W.2d 26, 29 (S.D.1978))). Therefore, this Court's more recent pronouncements have specifically indicated, in different contexts, that deductions for other coverage are permitted in uninsured/underinsured motorist policies. For example, this Court has stated that these insurance premiums are paid for a guaranteed "minimum recovery. The fact that premiums are paid for the coverage is not the conclusive determination that the insured is entitled to the full amount of coverage *without deduction." Nickerson,* 2000 SD 121, ¶ 15, 616 N.W.2d at 471 (emphasis added). More to the point, *Cunningham* specifically declined to extend *Westphal* beyond its particular facts, holding that "we see nothing in SDCL 58–11–9 which requires the stacking of the policy coverages for two separate vehicles. The insureds got exactly what the policy said they would." *Id.,* 90 S.D. at 533, 243 N.W.2d at 174.

[¶ 33.] Under these post-*Westphal* pronouncements, Progressive correctly points out that we have not held that the uninsured coverage statute (SDCL 58–11–9) *requires stacking.* Indeed, there is nothing in the language of SDCL 58–11–9 that even suggests the existence of a public policy *requiring* stacking. Therefore, if public policy does not require stacking, it is difficult to argue that public policy prohibits anti-stacking contracts of insurance. As we noted in *Bartron:*

> Until firmly and solemnly convinced that an existent public policy is clearly revealed, a court is not warranted in applying the principle under consideration. It has been well said, "that the right of

private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare."

*Id.*, 68 S.D. at 323, 2 N.W.2d at 344 (quoting *Baltimore & Ohio Southwestern Ry. Co. v. Voigt*, 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560, 565 (1900)).

[¶ 34.] Were there any lingering doubt about this Court's current pronouncements on this subject, *Union Ins. Co.* clearly held that stacking could be prohibited when it would result in a recovery in excess of the statutory amount set forth in SDCL 58–11–9. *Id.*, 454 N.W.2d at 739–40. This Court specifically noted that a non-aggregation (anti-stacking) clause could be considered in determining that Union's limits of liability did not exceed the statutory amount. *Id.* at n. 3. This Court reasoned that a clause limiting liability to the statutory amount required by uninsured motorist statutes was permitted because it satisfied the legislative policy expressed in the statute. *Id.* at 739–40.

[¶ 35.] Thus, a number of our decisions after *Westphal* have upheld anti-stacking provisions, and none have concluded that anti-stacking provisions violate public policy. *Id.; see also Cunningham*, 90 S.D. at 532, 243 N.W.2d at 173 (plaintiffs could not stack the uninsured motorist limits of one vehicle onto the limits of the vehicle in which their decedents were actually riding

when the accident occurred); *Nickerson*, 2000 SD 121, 616 N.W.2d 468 (passenger could not recover excess UIM benefits from her insurer because she had already recovered a total of $100,000 from the tortfeasor and the primary UIM carrier, an amount that equaled the policy limit on her excess UIM coverage).

[¶ 36.] In light of our recent precedent, I cannot join the majority's conclusion that "our precedent since *Westphal* compel[s]" the conclusion that anti-stacking provisions violate public policy, *supra* n. 2, or that "[t]his Court's ... subsequent decisions" allow the insured to stack coverage. *Supra* ¶ 15. On the contrary, were we to review Progressive's anti-stacking provisions based only upon our decisions since *Westphal*, we would most likely reach a different result.

[¶ 37.] Nevertheless, I concur in result because of the strength and breadth of the *Westphal* language, the substantial legislative activity restricting stacking in closely related areas while not restricting it in *Westphal* scenarios, and the fact that the Legislature has failed to abrogate *Westphal* despite its active involvement in this area for thirty years.

[¶ 38.] In my view, the analysis of Progressive's anti-stacking clauses begins and ends with *Westphal*. Initially, it must be noted that *Westphal's* analysis was not restricted to a review of "other insurance" clauses. The clause construed included "other insurance" and "anti-stacking" concepts.[3] That conclusion is evident from the *Westphal* holding:

3. The *Westphal* provision stated:
Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the principal named insured, the insurance under this endorsement shall apply *only as excess insurance over any other similar insurance* available to such insured and applicable to such automobile as primary insurance, and *this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.*
*Id.*, 87 S.D. at 406, 209 N.W.2d at 556 (emphasis added).

[T]hat 'other insurance' provisions, *whether in* the form of a *'pro rata,'* *'excess insurance,'* 'excess-escape,' *or* other similar clause, *are invalid* as a part of uninsured motorist protection, on the ground that the statute requiring every liability policy to provide this type of protection will not permit the insurer to provide in *any way* that the coverage will not apply where other insurance is also 'available,' despite the fact that the insured may thus be put in a better position than he would be in if the other motorist were properly insured.

*Westphal,* 87 S.D. at 408, 209 N.W.2d at 557 (emphasis added).

[¶ 39.] Thus, this broad language of *Westphal* applies to both of the Progressive clauses. Moreover, were there any question about the strength of that holding, it must be remembered that it has been repeatedly reaffirmed. *Supra* ¶ 12. It must finally be remembered that *Westphal* specifically rejects the rule advocated by Progressive here; i.e. the notion:

[T]hat the design and purpose of uninsured motorist statutes are to provide protection only up to the minimum statutory limits for bodily injuries, and not to provide the insured with greater insurance protection than would have been available had he been injured by an insured motorist, and have held that such 'other insurance' provisions are valid where they do not reduce coverage below the minimum statutory limits.

*Id.,* 87 S.D. at 408, 209 N.W.2d at 557–58. *Westphal* also observed that:

Nowhere in the statute does the legislature attempt to fix any maximum amount of recovery *less* than the amount of the loss. *The lack of pro ration language in the statute is conspicuous and can only weigh in favor of an inference of allowing stacking recovery.*

*Id.,* 87 S.D. at 410, 209 N.W.2d at 559 (emphasis added).

[¶ 40.] Although these pronouncements are in direct conflict with this Court's more recent precedent, *Westphal's* fundamental precepts have not been abrogated despite thirty years of legislative activity restricting stacking in this area. Consequently, until changed by the Legislature, *Westphal* remains the law of the State, and its broad language invalidates Progressive's "other insurance" and "anti-stacking" provisions.

[¶ 41.] I therefore concur in result on Issue 1 and concur on Issue 2.

[¶ 42.] KONENKAMP, Justice, joins this special writing.