#23711-a-JKM

**2006 SD 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOSEPH D. HOCKETT and
PEGGY L. HOCKETT,                        Plaintiffs and Appellees,

    v.

GLENN D. LaPOINTE,                       Defendant,

    and

AMCO INSURANCE COMPANY,                  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
GREGORY COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN F. TRANDAHL
Judge

* * * *

STANLEY E. WHITING                       Attorney for plaintiffs
Winner, South Dakota                     and appellees.


ROBERT B. ANDERSON
BRITTANY L. NOVOTNY of
May, Adam, Gerdes & Thompson, LLP        Attorneys for defendant
Pierre, South Dakota                     and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **06/07/06**

#23711

MEIERHENRY, Justice.

[¶1.]     Joseph and Peggy Hockett (Hocketts) each suffered damages in excess of $100,000 due to an automobile accident with an uninsured motorist. Hocketts each received $100,000 of uninsured motorist (UM) benefits from the primary policy that covered the vehicle in which they were traveling. They then sought to recover uninsured motorist coverage from their insurer, AMCO Insurance Company (AMCO). The trial court determined Hocketts could stack their UM benefits. The narrow issue presented on appeal is whether, absent a request for greater coverage, the language of SDCL 58-11-9 allows Hocketts to stack UM policies where doing so results in a recovery in excess of $100,000. We hold that the language of SDCL 58-11-9 does not create a mandatory maximum amount of recovery when UM policies are stacked.

**FACTS**

[¶2.]     This case arose out of an automobile accident involving two vehicles. Neither the driver at fault, Glenn LaPointe (LaPointe), nor the vehicle he drove were insured. The second vehicle was owned by Rebecca Hockett and insured by State Farm Mutual Automobile Insurance Company (State Farm). At the time of the accident, Rebecca's father, Joseph Hockett was driving the vehicle, and both Peggy Hockett, Joseph's wife, and Rebecca were passengers. Joseph and Peggy are the plaintiffs in this action.

[¶3.]     Rebecca's State Farm policy provided uninsured motorist coverage up to $100,000 per person or $300,000 per accident. As the primary insurer, State Farm paid both Joseph and Peggy Hockett $100,000 each for the injuries they

sustained. The parties stipulated that each sustained injuries in excess of $100,000. Joseph and Peggy Hockett were also insured under a personal automobile policy provided by AMCO, which provided UM coverage of $50,000 per person or $100,000 per accident. Hocketts filed a claim with AMCO for that amount, but AMCO denied coverage.

[¶4.] Hocketts brought this suit against LaPointe and AMCO. Hocketts alleged that they each incurred damages in excess of $100,000. Therefore, they sought not only a judgment against LaPointe for damages, but also a declaration that the AMCO policy must be used to satisfy that judgment in whole or in part. Asserting that Hocketts had no claim for coverage, AMCO moved for summary judgment. The parties submitted a statement of undisputed material facts which stipulated that Hocketts each recovered $100,000 from State Farm and that they were requesting the additional $50,000 uninsured motorist coverage provided by the AMCO policy. The circuit court denied AMCO's motion and ruled that Hocketts could recover from AMCO. The court determined that Hocketts could stack the AMCO uninsured motorist coverage up to the amount of their actual injuries. AMCO appeals that decision and presents one issue for this Court's determination.

## ISSUE

> Whether the trial court erred in its determination that the language of SDCL 58-11-9 does not prohibit Hocketts from recovering under their own insurance policy's UM coverage when their damages exceeded the $100,000 UM recovered from other insurance.

## STANDARD OF REVIEW

[¶5.]        As we have repeatedly recognized, summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact. SDCL 15-6-56(c); Thornton v. City of Rapid City, 2005 SD 15, ¶4, 692 NW2d 525, 528-29.  In doing so, we must view all evidence in a light most favorable to the nonmoving party.  *Id.* (citation omitted).  We must also determine whether the law was correctly applied.  Phen v. Progressive N. Ins. Co., 2003 SD 133, ¶5, 672 NW2d 52, 54.  The interpretation of both statutes and insurance contracts are questions of law subject to *de novo* review.  MGA Ins. Co. v. Goodsell, 2005 SD 118, ¶9, 707 NW2d 483, 485.

## DECISION

[¶6.]        The backdrop of our stacking jurisprudence is sometimes a confusing patchwork of cases and statutes defining and redefining both UM benefits and underinsured motorist (UIM) benefits.  Since the Legislature first mandated UM and UIM coverage in this state, the law has been changed and interpreted several times.  *See, e.g., Phen*, 2003 SD 133, 672 NW2d at 52; Nickerson v. Am. States Ins., 2000 SD 121, 616 NW2d 468; Union Ins. Co. v. Stanage, 454 NW2d 736 (SD 1990); Cunningham v. W. Cas. & Sur. Co., 90 SD 530, 243 NW2d 172 (1976); Westphal v. Amco Ins. Co., 87 SD 404, 209 NW2d 555 (1973).  For the most part, stacking is now controlled by statute.  SDCL 58-11-9.7 prohibits stacking an insured's UM and UIM benefits "to determine the limit of insurance coverage available to an injured person for any one accident," unless "two or more separate motor vehicle operators, one uninsured and the other underinsured, are determined to be liable."  Likewise,

SDCL 58-11-9.8 disallows stacking UM benefits from more than one of an insured's vehicles, while SDCL 58-11-9.9 does the same for UIM benefits.[1]  In addition, SDCL 58-11-9.5—the "difference of limits" statute—prohibits "stacking of UIM coverage from two policies."  *Nickerson*, 2000 SD 121, ¶12, 616 NW2d at 471.

[¶7.]        In contrast, however, the current law does not specifically prohibit stacking UM coverage available under two different policies from two different insurers.  We first addressed such a situation in *Westphal*, 87 SD at 404, 209 NW2d at 555.  *Westphal* held that a policy provision precluding the recovery of UM benefits where such benefits were recoverable from another vehicle was against public policy and therefore void.  *Id.* at 410-11, 209 NW2d at 559.  As a result, *Westphal* allowed a person injured by an uninsured motorist while riding in another's vehicle to recover both the UM coverage applicable to that vehicle and

---

1.      SDCL 58-11-9.8 provides:
        Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the insured's policy, or premiums paid, in no event may the limit of liability for uninsured motorist coverage for two or more of the insured's motor vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident.

        SDCL 58-11-9.9 provides:
        Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the insured's policy, or premiums paid, in no event may the limit of liability for underinsured motorist coverage for two or more of the insured's motor vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident.

also the UM coverage available under the injured person's own automobile liability policy. *Id.*

[¶8.]      Although the UM statute, SDCL 58-11-9, has been amended since our decision in *Westphal*, none of the amendments changed our *Westphal* analysis and we have repeatedly affirmed its holding. *See Phen*, 2003 SD 133, ¶21, 672 NW2d at 58; *Union*, 454 NW2d at 739. Our most recent stacking case, *Phen*, follows *Westphal* and determines that a policy provision which precludes recovery of UM benefits is against public policy. *See* 2003 SD 133, ¶21, 672 NW2d at 58.

[¶9.]      While recognizing that our decisions in *Westphal* and *Phen* allow stacking in situations almost identical to the one presented in this case, AMCO contends that the language of the UM statute precludes stacking here. Therefore, we must consider the language of the current version of the statute and the evolution thereof. The UM coverage statute was first enacted in 1966. The statute provided:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in §32-35-70 [$15,000/$30,000] for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage . . . .

1966 SD Laws ch 111, § 16(5). The first change occurred in 1972 when the Legislature removed the provision that allowed an insured to reject UM coverage,

thus making coverage mandatory. 1972 SD Laws ch 261. The Legislature again amended the statute in 1975 and 1982. 1975 SL ch 307; 1982 SL ch 356. The 1975 amendment allowed an insured to request UM coverage in excess of the amount provided by statute. 1975 SL ch 315, § 1. The 1982 amendment set the required amounts of UM coverage as follows:

> . . . the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured.

1982 SL ch 356. The 1982 provisions remain in effect today.

[¶10.]        These legislative changes have resulted in the current version of SDCL 58-11-9 which, in its entirety, provides:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured. Any policy insuring government owned vehicles may not be required to provide uninsured motorist coverage.

SDCL 58-11-9.  In essence, the UM statute requires all automobile liability insurance policies "delivered or issued for delivery" in South Dakota covering "any motor vehicle registered or principally garaged" in South Dakota to provide coverage for damages inflicted by uninsured and hit-and-run motorists.  SDCL 58-11-9.  The required UM policy coverage must be "in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death."  SDCL 58-11-9.  Additionally, the UM policy coverage "*may not exceed the limits of one hundred thousand dollars* because of bodily injury to or death of *one person* in any one accident and, subject to the limit for one person, *three hundred thousand dollars* because of bodily injury to or death of two or more persons in any *one accident*, unless additional coverage is requested by the insured."  SDCL 58-11-9 (emphasis added).

[¶11.]        AMCO claims that the $100,000/$300,000 amounts referenced in the statute serve as the mandatory maximum recovery when two or more UM policies are stacked.  The plain meaning of the statutory language, however, does not suggest such an interpretation.  The statute defines coverage, not recovery.  Clearly, the statute requires all vehicle liability policies issued in this state to include coverage for damages incurred because of the negligence of uninsured drivers and vehicle owners.  Additionally, the required UM coverage must be provided in the same amount as the liability coverage in the policy up to the maximum of $100,000 per person or $300,000 per accident, unless the insured requests more.  Other statutes require minimum liability coverage of $25,000 for one person per accident and $50,000 for two or more people per accident.  SDCL 32-35-70; *see also* SDCL 32-

35-113 (stating that failure to maintain the minimum automobile liability insurance is a Class 2 misdemeanor). Therefore, in the absence of a request for additional insurance, SDCL 58-11-9 requires that an insurer provide UM coverage between $25,000 and $100,000 for one person per accident and $50,000 and $300,000 for two or more people, depending on the amount of liability coverage in the policy. The plain meaning of the language should not be interpreted to mean that the Legislature intended to set a maximum amount of recovery regardless of the loss or the number of policies.

[¶12.]     AMCO points to language used by this Court in *Union* in support of its argument that SDCL 58-11-9 sets a statutory maximum amount of permissible UM recovery. *See Union*, 454 NW2d at 739. The language to which AMCO refers is part of a paragraph in which this Court discussed the public policy applicable to stacking the UM benefits of two policies issued to the same insured by the same insurer. *Id.* The one sentence taken out of context reads: "This modification of [SDCL 58-11-9 setting a maximum amount of required UM coverage] reflects a legislative determination that the maximum amount set forth in the statute is sufficient to protect those insureds who may be legally entitled to recover against an uninsured motorist." *Id.* In the context of the entire opinion, however, that sentence should not be read to mean that the Legislature set a mandatory maximum recovery amount merely by requiring all liability policies to include UM coverage. In fact, a close reading of *Union* reveals that this language was not

central to the holding.[2]  What was central to the holding was the language of the

insurance policy provision, which we determined controlled the outcome.  454 NW2d

---

2.     *Union Insurance Co. v. Stanage* came before this Court subsequent to the
       1982 amendment setting coverage amounts.  454 NW2d at 736.  The facts at
       issue in *Union* arose one month before the relevant anti-stacking statute,
       SDCL 58-11-9.8, discussed *infra* at ¶20, took effect.  *Union*, 454 NW2d at
       738.  The issue in *Union* was whether the insured could stack UM coverage in
       two policies of insurance issued to the insured by the same insurer.  *Id.* at
       737.  Both of Union's policies contained clauses limiting its maximum
       liability to $100,000 per person per accident in clear, unambiguous terms.  *Id.*
       at 738.  We said:

> In resolving the issue of whether [an insured] should be allowed
> to stack [UM] coverages . . . the determinative factor must be
> the apparent policy of our state legislature.  By enacting SDCL
> 58-11-9, our legislature clearly sought to provide protection to
> certain insureds who may be legally entitled to recover against
> uninsured motorists.  Subsequent to our decision in *Westphal*,
> the legislature amended this statute by providing a maximum
> amount of uninsured motorist coverage that an insurer could
> provide to an insured absent a request for additional coverage by
> the insured.  This modification of the statute reflects a
> legislative determination that the maximum amount set forth in
> the statute is sufficient to protect those insureds who may be
> legally entitled to recover against an uninsured motorist.

       *Id.* at 739 (citations omitted).  Despite our explanation of the meaning of
       SDCL 58-11-9, we relied solely on the language of the insurance policy in
       determining that stacking was not allowed.  *Id.* at 739.  We stated:

> [The insurer limited] its liability in clear and unambiguous
> terms. In both policies, [the insurer] specifically stated:

>> The limit of liability shown in the Declarations for "each
>> person" for Uninsured Motorist Coverage is *our* maximum
>> limit of liability for all damages for bodily injury
>> sustained by *any* one person in *any* one accident.

> (Emphasis added). The limit of liability for uninsured motorist
> coverage is the same on each declaration sheet, that is, $100,000
> per person. Thus, the clear import of the "limit of liability"
> clause in each policy is that [the insurer] will not provide

(continued . . .)

#23711

at 739-40. Therefore, to the extent that language in our prior opinions may be read to suggest that SDCL 58-11-9 establishes a public policy which precludes recovery in excess of the mandated amount of coverage, the prior language should not be interpreted as such and is not controlling.

[¶13.]    *Westphal* remains the controlling case regarding the type of stacking at issue here. *Phen*, 2003 SD 133, ¶¶28, 37-38, 672 NW2d at 59, 61 (Zinter, J., concurring). There we held that stacking of UM benefits for two different vehicles insured by two different policies was not precluded by statute. *Id.* ¶¶20-22, 672 NW2d at 58-59. Unless the parties have clearly and unambiguously limited such stacking by contract, it is not precluded.

[¶14.]    In the evolution of our stacking jurisprudence, the language of the individual policies was an important factor. In this case, however, AMCO does not rely upon its policy provisions. AMCO clearly points out in its brief that it is *not*

_____

(. . . continued)

> uninsured motorist benefits in an amount exceeding $100,000 per person for damages sustained in any one accident involving an uninsured motorist, irrespective of the vehicles covered or policies issued to [the insured] by [the insurer]. The clear meaning of this limiting language should be given effect considering the fact that [the insured] satisfied the apparent policy of the legislature by providing Stanage with the maximum amount of uninsured motorist coverage as set forth by the statute.

*Id.* at 739-40 (footnote omitted). Thus, we reasoned that because the insurer provided the amount of UM coverage dictated by SDCL 58-11-9, it satisfied the purpose of *that* statute and was "free to limit its total liability to that maximum amount in a subsequent policy issued to the same insured." *Id.* at 739.

attempting to avoid liability based on policy language in either the "other insurance" or UM coverage portions of the policy. In fact, the summary judgment motion makes no mention of the contract between the insured and insurer. AMCO relies strictly on the language of SDCL 58-11-9 and urges this Court to hold that the statutory language, in and of itself, limits stacking of UM coverage to the statutory amount of $100,000/$300,000. We decline to do so. We have clearly stated that the statutory amounts are only limiting if the insurer has stated the limits "*in clear and unambiguous terms.*" *Union*, 454 NW2d at 738 (emphasis added). Whether or not AMCO's policy with Hocketts contains clear and unambiguous terms of limitation is not before this Court, nor was it argued to the trial court as part of the summary judgment motion. We agree with the trial court that *Westphal* and *Phen* allow the stacking here, and we hold that the limits for UM coverage established in SDCL 58-11-9 do not *per se* prohibit stacking UM coverage in excess of the statutory amount.

[¶15.] Affirmed.

[¶16.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶17.] ZINTER, Justice, concurs specially.


ZINTER, Justice (concurring specially).

[¶18.] I fully concur in the Court's opinion. I write only to emphasize that this Court's opinions in *Westphal*, 87 SD 404, 209 NW2d 555; *Union*, 454 NW2d 736; and *Phen*, 2003 SD 133, ¶¶28-41, 672 NW2d 52, 59-62 (Zinter, J., concurring in result), only considered whether certain UM *policy limitations* were prohibited

by SDCL 58-11-9, the statute mandating UM coverage. However, policy limitations are concededly not at issue in this case. Therefore, the language of my concurring opinion in *Phen* should not be used to suggest that SDCL 58-11-9 precludes stacking when an insurer does not rely upon a policy limitation.