**R & S CONSTRUCTION COMPANY, A DIVISION OF ROBBINS & STEARNS COMPANY, INC., a South Dakota Corporation, Plaintiff,**

v.

**BDL ENTERPRISES, INC., a Corporation, Defendant and Appellant,**

and

**TSP Two, Inc., a Corporation, Defendant and Appellee.**

**17898.**

Supreme Court of South Dakota.

Argued Feb. 8, 1993.

Decided June 2, 1993.

Rehearing Denied July 1, 1993.

Ronald W. Banks, Banks, Johnson and Colbath, Rapid City, for defendant and appellant.

Edward C. Carpenter, Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for defendant and appellee.

SABERS, Justice.

Owner, who was determined liable to builder for additional costs of construction, claims architect should bear greater responsibility for those construction costs attributable to architect's negligence. We agree and reverse and remand.

### FACTS

On October 24, 1985, BDL Enterprises, Inc. (BDL) contracted with TSP Two, Inc. (TSP), an architectural firm, for TSP to provide architectural services for the design and construction of the Twin City Mall (Mall or project) in Lead, S.D. The project was to be conducted under a "fast track/design build" approach. Although this term was not defined within the contract, according to expert testimony, a fast track project is where the design and construction periods overlap. A design build project is where the design and construction functions are done by one entity.

On TSP's recommendation, BDL contracted with general contractor, R & S Construction Co. (R & S), on November 21, 1985. This contract also referred to the "fast-track system" of construction with supervision by TSP as the representative of BDL. Under the terms of the contract, R & S was to be reimbursed for total project costs including material, labor, subcontractor costs, sales taxes and all other costs, plus 7½% of the total project cost for overhead and 4½% for profit. The project was estimated to cost "somewhere in the neighborhood of $2,500,000." An exhibit attached to the contract attempted to define the scope of the project. The trial court found that it did not.

During the next seven months, BDL encountered numerous problems in negotiating and securing financing, defining the scope and size of the project, and locating and securing potential tenants, including its anchor tenant, Nash–Finch. Several design and construction schedules were not met and TSP was forced to redraw plans due to the changes BDL was continually making. Because of these, and numerous other problems, BDL temporarily shut the project down in February, 1986.

On July 3, 1986, BDL and R & S entered into another construction contract. This contract purported to be a "stipulated sum" contract, but the trial court found it was not. Although this contract also attempted to define the scope of the project, it was based upon incomplete drawings and specifications. The trial court again found that the scope was not defined because it was not known at the time of contracting.

A budget was attached to the contract which provided for "internal line item adjustments." This phrase, however, and its applicability to the project, was not defined. BDL testified that it believed a maximum price of $2,414,363 was guaranteed. R & S testified that, according to its understanding, it was only liable for the unit prices it had bid. The contract also contained change order provisions. Written change orders were not issued until many of the changes were made and the work completed. This was after the project had exceeded its budget.

During the construction phase, problems developed and the scope of the project changed substantially. BDL's delays and revisions resulted in added costs which were termed "internal line item adjustments." TSP prepared over 31 separate site plans due to the changing requirements of BDL. The trial court found that due to BDL's delay, indecision, and revision of the project, TSP was always behind with

the necessary plans, which were found deficient at times. The trial court found that the project was behind schedule even before it started, assigning fault to both BDL and TSP. This, in turn, delayed the construction by R & S and substantially increased the costs of completing the project.

## PROCEDURAL HISTORY

R & S sued BDL for breach of contract or recovery in quantum meruit, asking for damages of $438,809 and prejudgment interest. R & S also sued TSP for negligence in the design of the project and in preparation of the contract documents. R & S dismissed this claim against TSP following the trial.

TSP cross-claimed against BDL for indemnity, a balance due of $54,637.29, architectural fees of 4.565% of the cost of extra work by R & S, and prejudgment interest. TSP's indemnity claim against BDL became moot when R & S dismissed its action against TSP.

BDL denied the claims of R & S and counterclaimed for breach of contract, seeking $786,815.88 in damages against R & S. BDL also denied the cross-claim of TSP and counterclaimed for breach of contract for architectural services and negligence in the design and preparation of the project plans. BDL sought indemnification by TSP for the claims of R & S.

The trial court found R & S entitled to quantum meruit against BDL in the sum of $375,627.18, plus prejudgment interest. TSP recovered $25,572.11 for extra work, $13,519.22 for increased construction, and prejudgment interest against BDL. This award was reduced by TSP's share of the expenses of winter heat and snow and muck removal and TSP's pro rata share of overhead, excise taxes, and loss of profits. The trial court held for BDL ·on its cross-claim against TSP for breach of contract and awarded BDL $29,411.16 for damages, $17,819 for TSP's share of the repair work, and prejudgment interest. R & S and BDL reached a settlement after the filing of the Notice of Appeal.

BDL raises three issues on appeal:

1. Whether damages recovered by R & S for construction delays and extra work should be·allocated between BDL and TSP.
2. Whether TSP is entitled to additional fees for increased construction costs attributable to its own negligence.
3. Whether TSP is liable to BDL for additional overhead, excise taxes and lost profits.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is set forth in SDCL 15–6–52(a):

[T]his court shall not set aside findings of fact unless found to be clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.... In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

*Ex rel. A.D.*, 416 N.W.2d 264, 267 (S.D. 1987) (citations omitted). "A trial court's findings of fact and decision are presumed correct and we will not seek reasons to reverse." *Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218, 219 (S.D.1986) (citations omitted). Damage awards are in themselves, findings of fact, and are also reviewed under the clearly erroneous standard. Conclusions of law are reviewed de novo, *Permann v. S.D. Dept. of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113, 117 (S.D.1987), and must be supported by findings of fact. *Knodel v. Bd. of Cty. Comm'rs of Pennington Cty.*, 269 N.W.2d 386, 390 (S.D.1978) (citation omitted).

## TSP'S LIABILITY FOR DAMAGES

The trial court found that TSP was responsible with BDL for expenses of winter heat and snow and muck removal and a pro rata share of overhead, excise taxes, and loss of profits attributable thereto.

No appeal was taken from this determination. The trial court refused to find TSP partially liable to R & S for damages arising out of the Nash–Finch space, the installation of 18–gauge steel, the increased height of the building, and the application of stucco during the winter months. The court felt that these claims "more directly reflect costs of labor and materials which enhance the Mall's value, and therefore, should be awarded against the owner." BDL claims this was error.

### Nash–Finch Space

The trial court found BDL liable to R & S for an additional $56,952.95 of expense incurred by R & S to finish the interior of the Nash–Finch store. TSP had an equipment layout prepared by Nash–Finch in its possession prior to the signing of the contract between BDL and R & S. TSP failed to include it within the contract documents or make it available to R & S prior to the contract signing. BDL claims that TSP should be held liable to BDL for this mistake. Trial testimony indicated that R & S would have been able to accurately estimate the cost to finish the Nash–Finch space with the equipment layout. The trial court noted in its memorandum decision that

> [t]he plans provided to R & S by TSP upon which the cost estimates were based were not complete and were not the best available. TSP had prepared an exhibit, the Nash–Finch plan and design, and failed to give it to R & S. As a result, very relevant information pertinent to the scope of the project was withheld from R & S at a crucial stage in the relationship between these parties. This, despite the fact that throughout all of the preliminary meetings, BDL was continuously stressing the project cost and budget.

### Installation of 18–Gauge Wall Studs

R & S also claimed additional expense for the installation of 18–gauge metal wall studs. R & S had prepared the construction budget utilizing the estimated cost of installing 25–gauge wall studs based upon pre-bid discussions with TSP. According to the memorandum decision, TSP had design notes and other data within its offices establishing the correct specification before the contract was signed. Although this information was known to TSP, it failed to communicate it to R & S. The trial court rejected TSP's defense that R & S should have known this type of project would require 18–gauge wall studs stating that "this was [simply] another failure of the so-called team approach, similar to the failure to communicate the Nash–Finch plans to R & S."

### Increased Height of the Building

Additional expense was claimed due to the inexplicable increase of 1′5″ in the height of the Mall. This height increase appeared in the plans after R & S signed the construction contract. The trial court found that TSP failed to "satisfactorily explain how, why or when this occurred."

### Application of Stucco

The trial court also refused to hold TSP partially liable for the additional expenses of applying stucco during the winter months. In reference to the winter heat and snow and muck removal, the court noted that "the owner and the architect were the major causes of the delay which required the winter construction." TSP experienced internal personnel problems. TSP's project supervisor shut down further work on the project at one point. Vacations were taken at crucial times. TSP caused a delay in the structural steel erection, a major item. The trial court specifically found that "TSP's failure to have its work done caused a delay. Thereafter, the project was in very serious trouble because the delay in erecting the steel and the rainy fall weather caused winter work resulting in winter heat, snow and muck removal, *and the completion of the stucco exterior during the winter months.*" (Emphasis added.) For the same reasons that the court held TSP and BDL equally responsible for the costs of winter heat and snow and muck removal, TSP must share some responsibility with BDL for the completion of the stucco exterior during the winter

months. Therefore, the trial court's conclusion of law was error.

In *Kaufman v. Leard*, 356 Mass. 163, 248 N.E.2d 480 (1969), where the construction costs greatly exceeded the contract budget, the Massachusetts Supreme Court found the architect partially liable. In doing so, the court affirmed findings that the architect was negligent in failing to prepare adequate plans and to submit written specifications to the general contractor. The court noted that the architect's plans and specifications should have been sufficiently explicit for the general contractor to give a reasonably accurate estimate of the cost. *Id.* 248 N.E.2d at 483. *See generally Weill Const. Co., Inc. v. Thibodeaux*, 491 So.2d 166 (La.Ct.App.1986) (architects are liable for damages incurred by the owner when their plans and specifications are faulty and defective as a result of their neglect in exercising care and skill).

While it is true that the costs attributable to the Nash–Finch space, installation of 18–gauge metal wall studs, and the increase in the height of the Mall "reflect costs of labor and materials which enhance[d] the Mall's value," it was error to find BDL solely liable. The trial court stated in its memorandum decision that "a portion of the expenses are attributable to delays in plan preparation, planning deficiencies, and the sloppy project administration by the design professional, TSP." If TSP would have provided R & S with this information prior to the July 3 contract, R & S would have been able to more accurately bid the costs of constructing the Mall and BDL would have had the option of modifying the design of the Mall or not proceeding at all. *See Kaufman*, 248 N.E.2d 480. Even though these expenses increased the value of the Mall, on remand, BDL's ultimate liability for these expenses should be offset to some extent by TSP's liability for its negligence. *Id.* Therefore, the trial court's conclusion was not supported by the findings of fact. *Knodel*, 269 N.W.2d at 390.

We find that the trial court failed to accurately apportion between BDL and TSP these increased costs incurred by R & S. We reverse and remand for a correct determination.

## ARCHITECTURAL FEES

■ After finding that R & S was entitled to an additional $343,379.54 for increased construction costs, the trial court awarded TSP its architectural fee of 4.565% of that amount, less TSP's share of the costs for winter heat and snow and muck removal. As the trial court noted, TSP cannot recover its architectural fee based upon increased construction costs attributable to its own negligence. Because an additional portion of the increased construction costs are attributable to the negligence of TSP, the trial court is instructed, on remand, to adjust TSP's architectural fee award against BDL accordingly. The trial court's conclusion was error.

## OVERHEAD EXPENSES, EXCISE TAXES AND LOST PROFITS

Because TSP is liable to BDL for some of the additional costs incurred by R & S, the trial court is instructed on remand to also assign to TSP its pro rata share of overhead, excise taxes and lost profits attributable to such additional costs. We reverse and remand for redeterminations on this record consistent with this opinion.

WUEST and HENDERSON, JJ., concur.

MILLER, C.J., and AMUNDSON, J., dissent.

AMUNDSON, Justice (dissenting).

The trial court, after a lengthy trial, rendered a decision dividing the fault and responsibilities of the parties in a fifty-one page memorandum opinion, which was incorporated into its findings of fact and conclusions of law. The record in this case certainly is indicative of a hotly contested case, with numerous witnesses testifying in regards to the contested claims.

After considering the case, the trial court found the primary responsibility for delay and additional costs was BDL's indecision on the scope of project and continual revision of the project as it was being designed and built. Further, after this was com-

menced, it was discovered that BDL received additional compensation for some of the changes in the project from its tenant, Nash Finch. This additional compensation was retained by BDL and BDL then contended at trial that it should recover these same additional costs from TSP. The record does not indicate that the trial court offset this additional compensation from the amount of damages awarded to BDL. The accuracy of these findings of the trial court have not been challenged or shown to be erroneous.

There is a presumption that the ruling and decision of the trial court are correct and the appellate court should not seek reasons to reverse. *Pearson v. Pearson,* 312 N.W.2d 34, 36 (S.D.1981). The appellate court should review all the record in order to determine whether or not it is left with a definite and firm conviction that a mistake has been made. *Rosebud Sioux Tribe v. Strain,* 432 N.W.2d 259, 265 (S.D. 1988). A right result can be reached by a trial court even though there can be inconsistencies in arriving at same. *Seymour v. Western Dakota Voc. Tech. Inst.,* 419 N.W.2d 206, 209 (S.D.1988).

This court can easily find some inconsistencies in a well thought out fifty-one-page decision, but the real issue to be dealt with is whether, when considering the whole record, an error was made. I am not left with a definite and firm conviction that the trial court erred in its ruling on this complicated construction case. It found one party, BDL, was primarily responsible for the construction cost overruns and apportioned responsibility accordingly. Therefore, I would affirm.

I am authorized to state that Chief Justice MILLER joins in this dissent.