**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Deborah VOSTAD, Special Administratrix of the Estate of Jessica C. Regaldo, Deceased, Defendant and Appellant,**

and

**Northwestern National Insurance Company, Defendant.**

**No. 18603.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1994.

Decided Aug. 10, 1994.

Chester A. Groseclose of Richardson, Groseclose, Kornmann and Wyly, Aberdeen, for appellee State Farm.

Joe L. Maynes of Ronayne and Wein, Aberdeen, for appellant.

WUEST, Justice.

Deborah Vostad (Vostad), special administratrix of the estate of Jessica Regaldo (Jessica), deceased, appeals a judgment of the circuit court in favor of State Farm Mutual Automobile Insurance Company (State Farm). We affirm.

### FACTS

The issue in this appeal involves uninsured motor vehicle liability coverage as a result of the unfortunate death by carbon monoxide poisoning of two young persons.

A review of the relationships and circumstances surrounding these deaths is necessary to an understanding of the unique facts of this case. Sheldon Manning (Sheldon), aged eighteen at the time of his death, was married to Tammy Muldoon Manning (Tammy) in September 1991. Shortly after the marriage, Sheldon and Tammy (along with their two young children) moved into the Redfield, South Dakota home of Tammy's older sister Deborah Vostad (Deborah) and her husband Eric Vostad (collectively referred to as Vostads). Sheldon and Tammy paid rent for the space they occupied in the Vostad house and constituted a separate economic unit, including separate food purchase and preparation. Also living in the house was Deborah's daughter from her first marriage Jessica Regaldo (Jessica), aged fifteen at the time of her death. Sheldon and Tammy did not own a vehicle at the time of this incident; however, Sheldon had borrowed a Chevrolet Citation automobile from his grandparents Jerry and Anna Marie Stuchl (Stuchl) for use during the Christmas holidays.

On December 23, 1991, Tammy was out of town visiting her parents overnight in Aberdeen, South Dakota. Sheldon was in Redfield with the children. That afternoon, Deborah came home from work, gave Sheldon some money, and asked Sheldon to take Jessica bowling. Sheldon and Jessica were seen in the bowling alley sometime during the evening but did not return home. Deborah reported the absence of Sheldon and Jessica to the sheriff's office at about 12:23 a.m. on December 24. Tammy called the sheriff's office at approximately 11:00 a.m. on December 24, and suggested that the Stuchl home located at Cottonwood Lake (southwest of Redfield) be checked sometime that day. (The Stuchls were out of town for the holidays.) Apparently Tammy thought that Sheldon might have driven onto the lake and fallen through the ice.

A deputy drove to the Stuchl lake home, arriving in the early afternoon of December 24, some time after 1:00 p.m. The deputy observed the Citation sitting in the driveway. When the deputy exited his vehicle, he thought he could hear a motor running inside a large metal pole building on the property. Thinking the noise was just a heater or air compressor, he first checked the house and found no one at home. He then checked the pole building, forcing open a large overhead door. Inside he found a motor home with its engine running, and heavy exhaust fumes inside the building. The deputy entered the motor home and found Sheldon laying on the floor, deceased. Jessica was laying in the bed, also deceased. Sheldon's trousers and underwear were pulled down and Jessica was wearing no clothes below her waist. The deputy also found a strong odor of beer and empty beer cans in the Citation automobile. Blood tests indicated that both Sheldon and Jessica had consumed alcoholic beverages. Sheldon's blood alcohol level was .042% and Jessica's blood alcohol was .167%.

The Stuchls had purchased liability insurance on the motor home from Northwestern National Insurance Company (Northwestern). Northwestern denied coverage on the

ground that Sheldon did not have permission to use the motor home. Sheldon and Tammy did not own an automobile nor did they have any automobile liability insurance. Vostads (Jessica's mother and stepfather) owned a 1972 Ford on which they carried an automobile liability insurance policy issued by State Farm Mutual Automobile Insurance Company (State Farm) which included uninsured motorist coverage.

State Farm commenced this action against Deborah as special administratrix of Jessica's estate (Estate) and against Northwestern. State Farm sought a declaratory judgment that its automobile insurance contract with the Vostads did not provide uninsured motorist coverage to the Estate under the circumstances of Jessica's death. State Farm also alleged, in the alternative, that Sheldon was not "uninsured" because liability coverage was available under the Northwestern policy. The Estate answered, asserting that uninsured motorist coverage was available from State Farm; and cross-claimed against Northwestern, seeking a declaration that liability coverage was available under that policy. Northwestern denied all allegations and sought a declaration that such coverage was unavailable.

A trial was held to the circuit court. The court entered findings of fact and conclusions of law and judgment declaring that both the Northwestern and State Farm policies were inapplicable to the wrongful death claims of the Estate and that neither insurance company is obligated to make payment of any kind. The Estate appeals only those portions of the findings of fact, conclusions of law and judgment which relate to State Farm.

### STANDARDS OF REVIEW

■ We review the trial court's findings of fact under the clearly erroneous standard. *R & S Constr. Co. v. BDL Enter.,* 500 N.W.2d 628, 630 (S.D.1993); *Arnold Murray Constr. v. Wittrock,* 487 N.W.2d 33, 35 (S.D. 1992). In applying this standard, we will not overturn the trial court's findings unless, after reviewing all the evidence, "we are left with a definite and firm conviction that a mistake has been made." *Arnold Murray Constr.,* 487 N.W.2d at 35. We review the

trial court's conclusions of law de novo, and will overturn these conclusions of law when the trial court has erred as a matter of law. *R & S Constr.,* 500 N.W.2d at 630; *Century 21 Assoc. Realty v. Hoffman,* 503 N.W.2d 861, 864 (S.D.1993).

### INTERPRETATION OF INSURANCE CONTRACTS

Construction of a written contract is a question of law. *Dirks v. Sioux Valley Empire Elec. Ass'n,* 450 N.W.2d 426, 427–28 (S.D.1990). " '[W]here the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted.' " *Kremer v. American Family Mut. Ins. Co.,* 501 N.W.2d 765, 767–68 (S.D. 1993) (quoting *Prokop v. North Star Mut. Ins. Co.,* 457 N.W.2d 862, 864 (S.D.1990)). We have also noted:

> 'We are mindful of the rule of construction that where the provisions of an insurance contract are not clear and are fairly susceptible of different interpretation that one most favorable to the insured should be adopted. This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.'

*City of Fort Pierre v. United Fire and Casualty Co.,* 463 N.W.2d 845, 848 (S.D.1990) (quoting *Black Hills Kennel Club v. Firemens' Fund Indemnity Co.,* 77 S.D. 503, 506–07, 94 N.W.2d 90, 92 (1959)).

■ "[T]he provisions of an insurance contract 'are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.' " *Prokop,* 457 N.W.2d at 864 (quoting *Cheney v. Metropolitan Life Ins. Co.,* 370 N.W.2d 569, 573 (S.D.1985)). "Moreover, insurance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity." *Prokop,* 457 N.W.2d at 864 (citing *Helmbolt v. LeMars Mut. Ins. Co., Inc.,* 404 N.W.2d 55, 59 (S.D.1987)). Where it is necessary to review an insurance policy provision in light of statutory law, the court treats the statute as if it were actually writ-

ten into the policy. "'The terms of the policy are to be construed in light of the purposes and intent of the applicable statute.'" *Kremer,* 501 N.W.2d at 768–69 (quoting *Veach v. Farmer's Ins. Co.,* 460 N.W.2d 845, 847 (Iowa 1990)).

## ANALYSIS AND DECISION

This appeal requires us to interpret portions of a standard preprinted "State Farm Car Policy" purchased by the Vostads. The section describing the uninsured motor vehicle coverage provides in pertinent part:

> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle.**
>
> **Uninsured Motor Vehicle**—means:
>
> 1. a land motor vehicle, the ownership, maintenance or use of which is:
>
> .    .    .    .    .
>
> b. insured or bonded for bodily injury liability at the time of the accident; but ...
>
> (2) the insuring company denies coverage[.]

(Emphasis original in policy and indicating words defined within the policy.)

Embarking on an analysis of this policy language, we first note that it was undisputed that Jessica was an "insured" who suffered "bodily injury."[1] Because Northwestern denied coverage, the motor home became an "uninsured motor vehicle" under the terms of the State Farm policy quoted above (item (1.)(b.)(2)).[2] There is no appeal from this decision; thus, it is final.

The policy next requires that the bodily injury be caused by "accident." In its conclusion of law 4–12, the trial court quoted a 1940 case for the proposition that in South Dakota "the word 'accident' denotes an event which occurs upon the instant, rather than something that continues." *State v. Clark,* 67 S.D. 133, 137, 290 N.W. 237, 239 (1940) (construing the meaning of "accident" under the statute requiring a motorist to stop at the scene of an accident). Thus, the trial court concluded that the death of Jessica was not caused by an accident. This conclusion was in error, and we disagree with the trial court's analysis of the state of the law in South Dakota. In *Taylor v. Imperial Casualty & Indemnity Co.,* 82 S.D. 298, 144 N.W.2d 856 (1966), this court was called upon to consider the meaning of the term "accident" as used in a liability insurance policy. In *Taylor,* the insured sought to recover from the insurer under the terms of the policy. 82 S.D. at 301, 144 N.W.2d at 857. The insurer urged that it had no obligations under the liability policy because the source of the insured's claim—a leaking fuel storage tank—was not an accident, but rather a continuing nuisance or condition. 82 S.D. at 303–04, 144 N.W.2d at 858–59. The trial court disagreed with the insurer and this court affirmed stating: "We affirm the trial court's judgment of coverage based upon the findings that the leaks ... were the result of negligence and that *the unintended consequences were caused by accident. Injuries are caused by accident according to the quality of the result rather than the quality of the causes.*" 82 S.D. at 304, 144 N.W.2d at 859 (emphasis added) (citations omitted). Likewise, Jessica's bodily injury was the result of negligence; and the unintended consequence—her death—was caused by accident.[3] Although we disagree with the trial court on

---

1. "Bodily injury" is defined in the policy as "bodily injury to a person and sickness, disease or death which results from it."

2. The trial court found that Northwestern was entitled to judgment declaring that the Northwestern policy provided no liability coverage under these facts, specifically concluding that Sheldon "did not have implied permission or a reasonable belief that he was entitled to use the Stuchls' motor home."

3. As used in an automobile liability policy, the word "accident" means "an untoward and unforeseen occurrence in the operation of the automobile which results in injury to the person or property of another." BLACK'S LAW DICTIONARY 15 (6th ed. 1990). As used in insurance contracts generally, an "accident" happening through human agency is "an event which, under circumstances, is unusual and not expected by the person to whom it happens." *Id.*

this conclusion, this issue is not dispositive of the appeal.

Under the terms of the State Farm policy, the accident must have arisen "out of the operation, maintenance or use of an uninsured motor vehicle." This policy provision may be interpreted in light of SDCL 58–11–9, which provides in pertinent part:

No policy insuring against loss resulting from liability imposed by law for *bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle* may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are legally entitled to recover damages from *owners or operators* of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

*Id.* (emphasis added). The Estate does not allege in this appeal that it is "legally entitled to recover damages" from the *owner* of the motor home. Rather, the Estate alleges that it is legally entitled to recover damages from Sheldon as the *operator* of an uninsured *motor vehicle.*

The financial responsibility statutes define an "operator" as "every person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle." SDCL 32–35–1(9). Pertinent language of the same statute defines "motor vehicle" as "every vehicle which is self-propelled[.]" SDCL 32–35–1(6). The State Farm policy language does not define "motor vehicle," but does define a "car" as:

[A] land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include: 1. any vehicle *while located for use as a dwelling or other premises[.]*

(Emphasis added.) The State Farm policy also provides that, "An *uninsured motor vehicle* does not include a land motor vehicle ... while located *for use as premises.*" (Emphasis added.) Read together, a reasonable interpretation of the statutory and policy language indicates an intent that uninsured motorist coverage is available when the damages arise out of the use of a vehicle in conjunction with its transportation purpose. *Prokop,* 457 N.W.2d at 864.

The trial court found as a fact that although Sheldon started the engine of the motor home, it was not put into gear, driven or moved at any time pertinent to this case. Further, the motor home was not used for any transportation purpose. Rather, the court found that the motor home was used as a bedroom:

The scene in the motor home when the bodies were discovered was consistent with the conclusion that decedents had or had planned to engage in sexual relations. Jessica was on the bed unclothed from the waist down. Sheldon was on the floor with his pants down. No other explanation can reasonably account for what the deputy sheriff found at the scene.

Our review of the record does not convince us that this finding was clearly erroneous. *R & S Constr.,* 500 N.W.2d at 630.

■ The State Farm policy language clearly excludes coverage when a vehicle is used as "premises." The Stuchl motor home was not parked in the pole building by the Stuchls so that it could be used as a bedroom or other premises; however, that is the use that was made of the motor home on the night in question. It was clearly not being used as a "motor vehicle" or as a "car" as defined by statutory or policy language. It was not within the contemplation of the uninsured motorist statutes or the State Farm policy language that coverage would be afforded under facts such as these. We refuse

to employ a strained or forced construction of the policy language to mandate uninsured motorist coverage in these unique circumstances. *Prokop,* 457 N.W.2d at 864.

The judgment of the circuit court is affirmed.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.