#26261-rev & rem-DG

**2012 S.D. 83**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MEGAN E. WHEELER,                                 Plaintiff and Appellant,

    v.

FARMERS MUTUAL INSURANCE
COMPANY OF NEBRASKA,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Judge

* * * *

RONALD A. PARSONS, Jr. of
Johnson, Heidepriem &
  Abdallah, LLP
Sioux Falls, South Dakota
  and
JAMI J. BISHOP
A. RUSSELL JANKLOW of
Janklow Law Firm, Prof. LLC
Sioux Falls, South Dakota                 Attorneys for plaintiff
                               and appellant.

ERIC D. DENURE
RICHARD L. TRAVIS of
May & Johnson, PC
Sioux Falls, South Dakota                 Attorneys for defendant
                               and appellee.

* * * *

ARGUED AUGUST 28, 2012

OPINION FILED **12/05/12**

#26261

GILBERTSON, Chief Justice

[¶1.]        While driving a car owned by her divorced parents, Megan Wheeler

was hit and severely injured by an uninsured drunk driver.  Both her mother and

her father had automobile insurance policies.  Megan's father's policy with

Progressive Insurance Company (Progressive) specifically covered Megan's car and

paid Megan $100,000 in uninsured motorist benefits.  However, this amount did not

fully compensate Megan for her injuries.  Thus, Megan filed a claim under her

mother's policy with Farmers Mutual Insurance Company of Nebraska (Farmers),

which did not specifically cover Megan's car but covered Megan as an "insured."  Per

an "owned-but-not-insured" exclusion, Farmers denied Megan's claim for uninsured

motorist benefits.  Megan then filed this action, seeking a declaration that she is

entitled to uninsured motorist benefits under the Farmers policy.  Both Megan and

Farmers filed motions for summary judgment.  The circuit court held a hearing and

subsequently granted Farmers' summary judgment motion.  Megan appeals.

**FACTS**

[¶2.]        The facts of this case are not in dispute.  Megan is the daughter of

Daniel Wheeler and Maria Wheeler, who divorced in 2008 when Megan was a

minor.  At the time of the divorce, Daniel and Maria owned a 2005 Honda Accord,

which Megan used as her personal vehicle.  As required by the divorce judgment,

Daniel continued insuring the 2005 Honda Accord while Maria was responsible for

paying the balance due on the vehicle loan.  The car remained titled in the names of

both Daniel and Maria.

-1-

[¶3.]        Daniel insured the 2005 Honda Accord through Progressive.  The Progressive policy provided a $100,000 limit for uninsured motorist coverage on the Accord.  After the divorce, Maria purchased her own automobile insurance policy through Farmers.  The Farmers policy covered Maria's 1999 GMC Suburban and provided a $250,000 limit for uninsured motorist coverage.  It is undisputed that Megan qualifies as an "insured" under the Farmers policy.

[¶4.]        In March 2011, an uninsured drunk driver ran a red light and crashed into Megan while she was driving the 2005 Honda Accord.  Megan was severely injured, suffering a broken collar bone and multiple fractures in her pelvis.  At the time, Megan was attending the University of South Dakota on an athletic scholarship for the University's Division I golf team.  Due to the injuries Megan sustained in the accident, Megan was forced to withdraw from her classes and forfeit her athletic scholarship.[1]  The parties agree that Megan was not at fault in the accident.

[¶5.]        After the accident, Progressive paid Megan the full $100,000 in uninsured motorist benefits.  For purposes of this appeal only, it is undisputed that the $100,000 did not fully compensate Megan for her injuries.  Thus, Megan filed a claim with Farmers seeking recovery of the $250,000 in uninsured motorist benefits provided under Maria's policy.

---

1.      Megan returned to USD for the spring 2012 semester but did not re-join the golf team.

[¶6.]        Farmers denied Megan's claim based on what is commonly called an "owned-but-not-insured" exclusion in Maria's policy.  The exclusion appears under an "Exclusions for Uninsured Motor Vehicle Coverage" heading and reads: "[t]here is no coverage . . . [f]or bodily injury to any insured while occupying, or through being struck by, a motor vehicle or trailer of any type owned by you, your spouse or any relative if it is not insured for this coverage under this policy."  Therefore, because the 2005 Honda Accord was owned by Maria but not insured under the Farmers policy, Farmers denied Megan's claim for uninsured motorist benefits.

[¶7.]        After Farmers denied Megan's claim, Megan filed suit against Farmers seeking a declaration that Farmers' "owned-but-not-insured" exclusion was void and that Megan was entitled to recover uninsured motorist benefits from Farmers.  Farmers answered.  Megan moved for partial summary judgment and Farmers also moved for summary judgment.  After a hearing, the circuit court denied Megan's motion and granted Farmers' motion, generally relying on two South Dakota Supreme Court cases dealing with underinsured motorist coverage.  In one of the two cases, this Court specifically considered the validity of an "owned-but-not-insured" exclusion in the context of underinsured motorist coverage and found the exclusion to be valid and enforceable.  Megan appeals, arguing the circuit court erred as a matter of law in concluding that the "owned-but-not-insured" exclusion was valid and enforceable in relation to uninsured motorist coverage.

## STANDARD OF REVIEW

[¶8.] When reviewing a circuit court's grant of summary judgment, this Court only decides "whether genuine issues of material fact exist and whether the law was correctly applied." *Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶6, 752 N.W.2d 658, 662 (quoting *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 11, 707 N.W.2d 123, 126). In this case, "[t]he material facts are undisputed, and 'therefore, our review is limited to determining whether the trial court correctly applied the law.'" *De Smet Ins. Co. of S. D. v. Pourier*, 2011 S.D. 47, ¶ 4 n.1, 802 N.W.2d 447, 448 n.1 (quoting *Kobbeman v. Oleson,* 1998 S.D. 20, ¶ 4, 574 N.W.2d 633, 635). "Statutory construction and insurance contract interpretation are questions of law reviewable de novo." *Id.* (quoting *Demaray v. De Smet Farm Mut. Ins. Co.*, 2011 S.D. 39, ¶ 8, 801 N.W.2d 284, 287).

## ANALYSIS

[¶9.] In South Dakota, uninsured motorist coverage and underinsured motorist coverage are addressed in separate statutes. *See* SDCL 58-11-9, -9.4, -9.5. South Dakota's uninsured motorist statute provides:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required by this section may not exceed the limits of one

hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured. Any policy insuring government owned vehicles may not be required to provide uninsured motorist coverage.

SDCL 58-11-9. Additionally, the underinsured motorist statute relevant to this appeal provides:

Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

SDCL 58-11-9.5.

[¶10.]    In granting summary judgment in favor of Farmers, the circuit court acknowledged that the language used in these two statutes was distinct. However, the circuit court found that the case law dealing with uninsured motorist coverage and underinsured motorist coverage could be applied interchangeably. Because this Court had previously upheld the validity of an "owned-but-not-insured" exclusion in the context of underinsured motorist coverage under SDCL 58-11-9.5, the circuit court concluded that Farmers' "owned-but-not-insured" exclusion was valid and enforceable under SDCL 58-11-9.

[¶11.]    As mentioned above, the circuit court primarily relied on two cases in reaching this conclusion. These two cases were *De Smet Insurance Co. of South*

*Dakota v. Pourier*, 2011 S.D. 47, 802 N.W.2d 447, and *Gloe v. Iowa Mutual Insurance Co.*, 2005 S.D. 29, 694 N.W.2d 238.

[¶12.]    In *Pourier*, this Court specifically ruled on the validity of an "owned-but-not-insured" exclusion. *See* 2011 S.D. 47, 802 N.W.2d 447. The facts of *Pourier* are nearly identical to the facts of this case. However, the one notable difference is that in *Pourier* the minor was involved in an accident with an *underinsured* motorist whereas in this case Megan was hit by an *uninsured* motorist.[2] Therefore, in *Pourier*, this Court analyzed the validity of the "owned-but-not-insured" exclusion under South Dakota's underinsured motorist statute (SDCL 58-11-9.5) as opposed to its uninsured motorist statute (SDCL 58-11-9). *Id.* ¶ 5, 802 N.W.2d at 448-49. Ultimately, in *Pourier*, this Court concluded that the "owned-but-not-insured" exclusion was valid and enforceable under SDCL 58-11-9.5. *Id.* ¶ 12, 802 N.W.2d at 451-52. As a result, the minor in *Pourier* was precluded from recovering under the insurance policy that covered the minor as an insured but did not cover the car she was driving. *Id.*

[¶13.]    In *Gloe*, this Court considered the issue of *who* was intended to be protected by the coverage mandated under SDCL 58-11-9.5. *See* 2005 S.D. 29, 694 N.W.2d 238. In *Gloe*, the plaintiff sued to recover underinsured motorist benefits under his car insurance policy based upon the wrongful death of his parents

---

2.    As a result, unlike in this case where Megan has recovered under the policy insuring the car she was driving and seeks coverage as an insured under her mother's policy, in *Pourier* the minor recovered under the policy insuring the car she was driving *and* the underinsured tortfeasor's policy, and sought coverage under a third policy which covered her as an "insured" but did not specifically cover the car she was driving.

(pedestrians who were struck and killed by a vehicle). *Id.* ¶¶ 2-4, 694 N.W.2d at 240-41. The plaintiff argued that his policy endorsement, which limited underinsured motorist coverage to "bodily injury or death" sustained by an "insured," was void under SDCL 58-11-9.5 because SDCL 58-11-9.5 did not explicitly restrict underinsured motorist coverage to bodily injury or death sustained by an insured. *Id.* ¶¶ 5-6, 694 N.W.2d at 241. Rather, SDCL 58-11-9.5 generally provides "the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident . . . "

[¶14.] In considering the issue of who was intended to be protected under SDCL 58-11-9.5, this Court noted that although the language of SDCL 58-11-9 specifically limited coverage to bodily injury or death suffered by an insured, the language of SDCL 58-11-9.5 did not. *Id.* ¶¶ 12-13, 694 N.W.2d at 243. However, this Court stated that "because of the similarity of subject and purpose of [uninsured motorist] and [underinsured motorist] statutes and coverage, most of the decisions considering this issue construe [uninsured motorist] and [underinsured motorist] claims, policies, and statutory language interchangeably." *Id.* ¶ 11, 694 N.W.2d at 242. This Court further stated that "we construe our [uninsured motorist] and [underinsured motorist] statutes together," and "apply the case law considering [uninsured motorist] and [underinsured motorist] coverage interchangeably." *Id.*

[¶15.] Therefore, this Court reviewed both SDCL 58-11-9 and SDCL 58-11-9.5 to determine who these statutes were meant to protect. Ultimately, this Court

concluded that the Legislature only intended to mandate coverage for the protection of the *insured* for the *insured's bodily injury or death* in enacting these statutes. *Id.* ¶¶ 11-31, 694 N.W.2d at 242-250. As a result, this Court determined that the endorsement in the plaintiff's policy, which limited underinsured motorist coverage to "bodily injury or death" sustained by an "insured," was valid and enforceable. *See Id.* ¶ 29, 694 N.W.2d at 249-50. Accordingly, this Court found that the plaintiff could not recover underinsured motorist benefits because his parents were not insureds under his policy and he did not personally suffer bodily injury or death. *Id.*

[¶16.]    In Megan's motion for partial summary judgment, Megan argued that in the context of uninsured motorist coverage, the question of whether an "owned-but-not-insured" exclusion was valid and enforceable was an issue of first impression in South Dakota. However, the circuit court determined that this was not an issue of first impression because this Court had already ruled on the validity of an "owned-but-not-insured" exclusion in the context of underinsured motorist coverage in *Pourier*. Further, it determined that this Court's decision in *Pourier* controlled because *Gloe* allowed case law regarding uninsured motorist coverage and underinsured motorist coverage to be applied interchangeably. As a result, the circuit court concluded that Farmers' "owned-but-not-insured" exclusion was valid and enforceable, and that Farmers was thus entitled to summary judgment as a matter of law.

[¶17.]    However, a review of *Gloe* demonstrates that the circuit court erred in using *Gloe* for the proposition that the case law and language of the uninsured

motorist statute and underinsured motorist statute can be applied interchangeably in this case. Although this Court's statements supporting construing the uninsured motorist statute and underinsured motorist statute together in *Gloe* may appear to have broad application, a more thorough review of *Gloe* establishes that these statements were intended to apply only to the particular issue this Court addressed in that case. More specifically, these statements were only meant to apply to this Court's consideration of who was meant to be protected by the coverage mandated under SDCL 58-11-9 and SDCL 58-11-9.5.

[¶18.] The limited application of this Court's statements in *Gloe* is evidenced by the context in which these statements were made. In evaluating the validity of the policy provision limiting coverage to "bodily injury or death" suffered by an "insured" in *Gloe*, this Court considered how other courts with similar uninsured motorist statutes and underinsured motorist statutes have treated the issue of who these statutes were meant to protect. As noted above, this Court stated that "because of the similarity of subject and purpose of [uninsured motorist] and [underinsured motorist] statutes and coverage, most of the decisions considering *this* issue construe [uninsured motorist] and [underinsured motorist] claims, policies and statutory language interchangeably." *Gloe*, 2005 S.D. 29, ¶ 11, 694 N.W.2d at 242 (emphasis added).

[¶19.] This Court's use of the term "this" demonstrates that its statements about construing the uninsured motorist and underinsured motorist statutes and case law interchangeably applied only to its analysis of the specific issue of who the coverage mandated by SDCL 58-11-9 and SDCL 58-11-9.5 was intended to protect.

Who the uninsured motorist statute and underinsured motorist statute were intended to protect was not at issue in this case. In this case, the only issue before the circuit court was whether the "owned-but-not-insured" exclusion was valid and enforceable in the context of uninsured motorist coverage. As a result, the circuit court incorrectly applied the law by taking this Court's statements in *Gloe* out of context and using them to support its decision to apply the case law regarding the uninsured motorist statute and underinsured motorist statute interchangeably. Accordingly, the circuit court incorrectly applied the law in determining that this Court's decision in *Pourier* controlled, meaning that it also incorrectly applied the law in concluding that Farmers' "owned-but-not-insured" policy exclusion was valid and enforceable with regard to uninsured motorist coverage. Therefore, the circuit court erred in granting summary judgment in favor of Farmers.

[¶20.]    Instead, an analysis of SDCL 58-11-9 and SDCL 58-11-9.5 establishes that these two statutes are distinct, and that their language and case law cannot be construed interchangeably in this case. In construing a statute, this Court's goal "is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute." *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d 141, 143 (quoting *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611). "The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used." *Id.* This means that "[w]ords and phrases in a statute must be given their plain meaning and effect." *Id.* "If the words and phrases in the statute have plain meaning and effect, [the court] should simply

declare their meaning and not resort to a statutory construction." *Saunder v. Parkview Care Ctr.*, 2007 S.D. 103, ¶ 17, 740 N.W.2d 878, 883 (quoting *In re W. River Elec. Ass'n*, 2004 S.D. 11, ¶ 15, 675 N.W.2d 222, 226).

[¶21.] In addition, legislative intent "must be determined from the statute as a whole, as well as enactments relating to the same subject." *Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d at 143 (quoting *Martinmaas*, 2000 S.D. 85, ¶ 49, 612 N.W.2d at 611). Further, the principles of statutory construction require that:

> A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, . . . No clause, sentence or word shall be construed as superfluous, void or insignificant if the construction can be found which will give force to and preserve all the words of the statute. *While every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose.*

2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06, 181-92 (6th ed. 2000) (emphasis added).

[¶22.] As can be seen from a review of SDCL 58-11-9 and SDCL 58-11-9.5, the language used in these two statutes is different. Most significantly, SDCL 58-11-9.5 includes the language "[s]ubject to the terms and conditions of such underinsured motorist coverage . . . " whereas SDCL 58-11-9 does not include such language. Thus, although SDCL 58-11-9.5 expressly allows an insurer to limit coverage, SDCL 58-11-9 does not.

[¶23.] We presume that the Legislature meant something when it included this language in the underinsured motorist statute, but did not include such language in the uninsured motorist statute. The exclusion of such language from

the uninsured motorist statute indicates that although the Legislature contemplated insurers placing limitations on the terms and conditions of underinsured motorist coverage, it did not intend for such limitations to be placed upon the terms and conditions of uninsured motorist coverage. If the Legislature had intended the coverage mandated under SDCL 58-11-9 to be "[s]ubject to the terms and conditions of such un[insured] motorist coverage," it would have said so. Instead, it chose not to include such language.[3] Therefore, because the Legislature expressly allowed insurance companies to place limitations upon underinsured motorist coverage but did not expressly do so for uninsured motorist coverage, we conclude that Farmers' "owned-but-not-insured" exclusion is void with regard to uninsured motorist coverage.

[¶24.]     This conclusion is further supported by the fact that the language of SDCL 58-11-9 expressly provides for an exclusion with respect to uninsured motorist coverage. The last sentence of SDCL 58-11-9 provides that "[a]ny policy insuring government owned vehicles may not be required to provide uninsured motorist coverage." The inclusion of this language within SDCL 58-11-9 demonstrates that the Legislature knew how to allow insurance companies to limit coverage in the context of uninsured motorist coverage, and did so with respect to

---

3.     The potential rationale for the Legislature's omission of language from SDCL 58-11-9 expressly allowing insurance companies to place limitations upon uninsured motorist coverage could be due to its recognition that in underinsured motorist cases, the insured has the protection of two policies (his or her own policy and the tortfeasor's policy), whereas in uninsured motorist cases, the insured does not have the benefit of recovering under the tortfeasor's policy.

government vehicles. As a result, if the Legislature intended to permit exclusions such as Farmers' "owned-but-not-insured" exclusion in the context of uninsured motorist coverage, it could have done so. The fact that the language of SDCL 58-11-9 does not contain such an exclusion provides further support for the conclusion that Farmers' "owned-but-not-insured" exclusion is void in this case.[4]

[¶25.]      Finally, Megan invites this Court to determine whether Farmers' "owned-but-not-insured" exclusion is void in its entirety (meaning that Megan could recover up to the full $250,000 in uninsured motorist benefits available under the Farmers policy provided that she can prove the extent that her damages exceed the $100,000 she received from Progressive) or whether Farmers' "owned-but-not-insured" exclusion is only void up to the minimum coverage mandated by SDCL 32-35-70 (South Dakota's Motor Vehicle Financial Responsibility Law). We decline to address this issue, and remand it for review by the circuit court.

**CONCLUSION**

[¶26.]      The statements this Court made in *Gloe* regarding the interchangeability of the language and case law of SDCL 58-11-9 and SDCL 58-11-9.5 were intended to be confined to the issue presented to this Court in that case. As a result, the circuit court incorrectly applied the law when it used this Court's statements in *Gloe* to allow it to rely on *Pourier* in concluding that Farmers' "owned-but-not-insured" exclusion was valid and enforceable under SDCL 58-11-9, even

---

4.      If this Court has misinterpreted the Legislature's intent in determining that Farmers' "owned-but-not-insured" exclusion is void under SDCL 58-11-9, the Legislature is free to clarify its intent.

-13-

though *Pourier* only dealt with the validity of an "owned-but-not-insured" exclusion under SDCL 58-11-9.5. Therefore, the circuit court erred in granting summary judgment in favor of Farmers. Instead, SDCL 58-11-9 and SDCL 58-11-9.5 are distinct, and Farmers' "owned-but-not-insured" exclusion is void in this case. We reverse and remand for proceedings consistent with this opinion.

[¶27.]     KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

[¶28.]     ZINTER, Justice, concurs specially.

ZINTER, Justice (concurring specially).

[¶29.]     I join the opinion of the Court. I write specially to encourage the Legislature to clarify this State's policy regarding the uninsured and underinsured motorist insurance coverage that is required to be provided under our statutes.

[¶30.]     The first uninsured motorist coverage statute was enacted in 1966, and the first underinsured motorist coverage statute was enacted in 1975. Since that time, the Legislature has attempted to clarify, and this Court has attempted to interpret, those statutes on numerous occasions. Yet confusion and disagreements persist regarding the Legislature's intent with respect to the coverage that is mandated and the coverage that may be excluded or limited. As a result, both insurance consumers and insurance companies have been required to repeatedly resolve their statutory disagreements in the courts. Today's case is one such example.

[¶31.]     Today we point out that uninsured and underinsured motorist coverage statutes are generally similar and appear to have similar purposes. Yet,

there are subtle differences.  Because of one such difference, we conclude that insurers may not exclude "owned-but-not-insured" autos from the mandated uninsured motorist coverage, but they may exclude such autos from the mandated underinsured motorist coverage.  *See supra* ¶ 26.  Is this really what the Legislature intended?

[¶32.]      We are required to answer that question in the affirmative based on established rules of statutory interpretation that courts must apply when the language of the statutes does not explicitly answer the question.  The rule of interpretation we employ recognizes that although separate statutes mandate uninsured motorist coverage and underinsured motorist coverage, only SDCL 58-11-9.5 permits mandated underinsured motorist coverage to be "subject to the terms and conditions" of the policy.  *See id.*  And because the uninsured motorist coverage statute does not contain language allowing uninsured coverage to be limited by insurer terms and conditions, we conclude that the "owned-but-not-insured" exclusion in Farmers Mutual's policy is void.

[¶33.]      But court rules of interpretation are not infallible, and they may lead to what some may conclude is an inconsistent result.  For example, applying the reasoning we utilize today, one would expect that other exclusions and limitations in uninsured motorist policies would not be permitted under the uninsured motorist coverage statute.  They would not be permitted because the uninsured motorist coverage statute has no language providing that coverage may be subject to the

terms and conditions of the policy.[5] But that is not always the case. In *De Smet Insurance Co. of South Dakota v. Gibson*, 1996 S.D. 102, ¶¶ 6-8, 552 N.W.2d 98, 99-101, this Court allowed an insurer to deny uninsured motorist coverage because a "resident family member" exclusion in the policy did not violate the public policy mandating coverage in SDCL 58-11-9. In *State Farm Mutual Automobile Insurance Co. v. Vostad*, 520 N.W.2d 273, 277 (S.D. 1994), this Court allowed an insurer to deny uninsured motorist coverage because the policy "exclude[d] coverage when a vehicle [was] used as 'premises.'" Also, this Court upheld a limiting liability clause, noting that "nothing in SDCL 58-11-9 . . . require[d] the stacking of the uninsured motorist coverages for two separate vehicles." *Cunningham v. W. Cas. & Sur. Co.*, 90 S.D. 530, 533, 243 N.W.2d 172, 174 (1976).[6]

---

5.    This Court has repeatedly voided other policy terms and conditions excluding or limiting uninsured motorist coverage. *See, e.g.*, *Westphal v. Amco Ins. Co.*, 87 S.D. 404, 408-11, 209 N.W.2d 555, 557-59 (1973) (holding that an "other insurance" exclusion in the policy's uninsured motorist coverage was void as against public policy); *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 31 (S.D. 1978) (holding that the physical contact rule in "phantom car" situations was contrary to the purpose of uninsured motorist coverage statutes); *Nat'l Farmers Union Prop. & Cas. Co. v. Bang*, 516 N.W.2d 313, 320-21 (S.D. 1994) (determining that a set-off provision for worker's compensation benefits in the policy's uninsured motorist coverage was void and contrary to public policy); *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 757 (S.D. 1994) (holding that a set-off provision in the policy's uninsured motorist coverage was void and unenforceable as against public policy); *Phen v. Progressive N. Ins. Co.*, 2003 S.D. 133, ¶ 21, 672 N.W.2d 52, 58 (stating that if the Legislature had "determined that 'other insurance' [exclusions] were in accord with public policy . . . , it clearly could have addressed the issue in one of the numerous changes and additions to the uninsured and underinsured motorist [coverage] statutes").

6.    In 1986, the Legislature codified the result in *Cunningham*, 90 S.D. 530, 243 N.W.2d 172. *See* SDCL 58-11-9.8.

[¶34.]     Thus, South Dakota's statutes and cases permit inconsistencies between mandated uninsured and underinsured motorist coverage as well as inconsistencies within each type of coverage. There are also inconsistencies with respect to "stacking."[7] *Compare Westphal v. Amco Ins. Co.*, 87 S.D. 404, 209 N.W.2d 555 (1973), *and Phen v. Progressive N. Ins. Co.*, 2003 S.D. 133, 672 N.W.2d 52 (both allowing the stacking of the vehicle's uninsured motorist coverage and the injured passenger's uninsured motorist coverage), *with Nickerson v. Am. States Ins.*, 2000 S.D. 121, 616 N.W.2d 468 (disallowing the stacking of the vehicle's underinsured motorist coverage and the injured passenger's underinsured motorist coverage).

[¶35.]     It would be a significant benefit to insurance consumers, insurance companies, and the courts if the Legislature would express South Dakota's policy with respect to these inconsistencies. South Dakota's statutes should be clarified such that uninsured and underinsured motorist coverage statutes could be interpreted similarly except as the Legislature specifically directs. Clarification is also needed with respect to the "terms and conditions" language in SDCL 58-11-9.5;

---

7.     The term "stacking" in insurance law has varying definitions, but it generally arises:

> where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded. In essence, stacking describes the phenomenon of insureds or claimants against them adding all available policies together to create a greater pool in order to satisfy their actual loss.

*Phen*, 2003 S.D. 133, ¶ 9, 672 N.W.2d at 55 (quoting 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 169:4 (3d ed. 1999)).

i.e., which limiting or exclusionary "terms and conditions" does the Legislature intend to allow insurance companies to include in their policies providing underinsured motorist coverage. After all, even though SDCL 58-11-9.5 permits underinsured motorist coverage to be subject to the "terms and conditions" of the policy, the statute "was not intended to permit any restriction an insurer may wish to create. It was only intended to allow limitations on coverage to the extent that they do not violate the public policy expressed in the statutes." *Gloe v. Iowa Mut. Ins. Co.*, 2005 S.D. 29, ¶ 16, 694 N.W.2d 238, 244 (citing *Phen*, 2003 S.D. 133, ¶ 6, 672 N.W.2d 52, 54). But that public policy is not specifically expressed and only the Legislature can clarify the statutes.